Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677
(Consolidated)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

ATLAS DATA PRIVACY CORP., AS ASSIGNEE OF INDIVIDUALS WHO ARE COVERED
PERSONS; JANE DOE 1, A LAW ENFORCEMENT OFFICER; JANE DOE 2,
A LAW ENFORCEMENT OFFICER; EDWIN MALDONADO; SCOTT MALONEY;
JUSTYNA MALONEY; PATRICK COLLIGAN;
PETER ANDREYEV; AND WILLIAM SULLIVAN,

PLAINTIFFS-APPELLEES,

*v.*

WE INFORM LLC, ET AL.

DEFENDANTS-APPELLANTS.

On Appeal from the Order and Memorandum of the United States District Court
for the District of New Jersey dated November 26, 2024

## JOINT APPENDIX
### Volume 3 of 4
### (JA482 through JA820)

| | |
|---|---|
| Angelo A. Stio III | Marcel S. Pratt |
| Melissa A. Chuderewicz | Michael Berry |
| Stephanie L. Jonaitis | Anna Kaul |
| **TROUTMAN PEPPER LOCKE LLP** | **BALLARD SPAHR LLP** |
| Suite 400, 301 Carnegie Center | 1735 Market Street, 51st Floor |
| Princeton, NJ 08540 | Philadelphia, PA 19103-7599 |
| (609) 452-0808 | (215) 864-8500 |
| Angelo.Stio@troutman.com | prattm@ballardspahr.com |
| Melissa.Chuderewicz@troutman.com | berrym@ballardspahr.com |
| Stephanie.Jonaitis@troutman.com | kaula@ballardspahr.com |
| *Attorneys for Defendants-Appellants* | *Attorneys for Defendants-Appellants* |
| *RocketReach LLC (No. 25-1582);* | *Thomson Reuters Corporation,* |
| *Deluxe Corp. (No. 25-1559); Proper-* | *Thomson Reuters Canada Limited, Thom-* |
| *tyRadar Inc. (No. 25-2584); and DM* | *son Reuters Enterprise Centre GmbH, and* |
| *Group Inc. (No. 25-1558)* | *West Publishing Corp. (No. 25-1570)* |

[*Additional Counsel on Following Pages*]

*Counsel Continued from Cover Page*:

Robert T. Szyba
**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Defendants-Appellants*
*We Inform, LLC (No. 25-1555);*
*Infomatics, LLC (No. 25-1556); and*
*The People Searchers, LLC*
*(No. 25-1557)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI LLP**
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants-Appellants*
*Quantarium Alliance, LLC and*
*Quantarium Group, LLC (No. 25-1560)*

Derek L. Shaffer
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

Owen B. Smitherman
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Defendant-Appellant*
*Yardi Systems, Inc. (No. 25-1561)*

Eric H. Lubin
**LOMURRO, MUNSON, LLC**
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ 07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants-Appellants*
*Digital Safety Products, LLC (No.*
*25-1562); Civil Data Research (No.*
*25-1563); and Scalable Commerce &*
*National Data Analytics (No. 25-1564)*

Ryan J. Cooper
Renier Pierantoni
**COOPER, LLC – COUNSELORS AT LAW**
108 N. Union Ave., Suite 4
Cranford, NJ 07016
ryan@cooperllc.com
renier@cooperllc.com

*Attorneys for Defendant-Appellant
Labels & Lists, Inc. (No. 25-1565)*

Jill A. Guldin
**PIERSON FERDINAND LLP**
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(856) 896-409
jill.guldin@pierferd.com

-and –

Jason A. Spak
**FISHERBROYLES LLP**
6360 Broad Street #5262
Pittsburgh, PA 15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant-Appellant
Innovis Data Solutions, Inc.
(No. 25-1566)*

John E. MacDonald
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants-Appellants
Accurate Append, Inc. (No. 25-1567);
and Restoration of America, Inc. and
Voter Reference Foundation, LLC
(No. 25-1572)*

Samantha L. Southall
**BUCHANAN INGERSOLL & ROONEY PC**
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
samantha.southall@bipc.com

*Attorneys for Defendants-Appellants
Zillow Inc. and Zillow Group, Inc.
(No. 25-1568)*

Frederick W. Alworth
Kevin R. Reich
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant-Appellant*
*Equimine, Inc. (No. 25-1569)*

Michael P. O'Mullan
**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant-Appellant*
*Melissa Data Corporation*
*(No. 25-1571)*

Richard J.L. Lomuscio
**STINSON LLP**
100 Wall Street, Suite 201
New York, NY 10005
(646) 883-7471
richard.lomuscio@stinson.com

*Attorneys for Defendant-Appellant*
*i360, LLC (No. 25-1573)*

David E. Sellinger
Aaron Van Nostrand
**GREENBERG TRAURIG LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
vannostranda@gtlaw.com

*Attorneys for Defendants-Appellants*
*GoHunt, LLC, GoHunt Management*
*Holdings, LLC, and GoHunt*
*Management Holdings II, LLC*
*(No. 25-1574)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

Jennifer Fiorica Delgado
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, NJ 07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant-Appellant
AccuZip, Inc. (No. 25-1575)*


Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant
Joy Rockwell Enterprises, Inc. d/b/a
PostcardMania PCM LLC (No. 25-1577)*

Matthew S. AhKao
**LEWIS BRISBOIS BISGAARD & SMITH,
LLP**
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 577-6260
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant-Appellant
Synaptix Technology, LLC
(No. 25-1576)*


J. Timothy McDonald
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2906
Tim.McDonald@ThompsonHine.com

-and-

Steven G. Stransky
(admission pending)
127 Public Square, #3900
Cleveland, OH 44114
(216) 566-5500
Steve.Stransky@ThompsonHine.com

*Attorneys for Defendant-Appellant
Fortnoff Financial, LLC (No. 25-1578)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI LLP**
MANSUKHANI LLP
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant-Appellant*
*Nuwber, Inc. (No. 25-1581)*

H. Mark Stichel
**RKW, LLC**
10075 Red Run Blvd., 4th Floor
Owings Mills, MD 21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant-Appellant*
*E-Merges.com, Inc. (No. 25-1580)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*The Alesco Group, L.L.C. (improperly*
*pled as Alesco AI, LLC, Alesco*
*Marketing Solutions, L.L.C., Stat*
*Resource Group Inc., and Response*
*Solutions Group, LLC) (No. 25-1585)*

Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
**BLANK ROME LLP**
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant-Appellant*
*Belles Camp Communications, Inc.*
*(No. 25-1583)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Amerilist, Inc. (No. 25-1587)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Searchbug, Inc. (No. 25-1586)*

Kenneth D. Friedman
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant-Appellant*
*Smarty, LLC d/b/a SmartyStreets, LLC*
*(No. 25-1589)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*US Data Corporation (No. 25-1588)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**RAJ FERBER PLLC**
Kiran Raj
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 827-9785
kiran@rajferber.com

*Attorneys for Defendant-Appellant*
*DarkOwl, LLC (No. 25-1591)*

Jared K. Levy
**WOOD, SMITH, HENNING & BERMAN LLP**
400 Connell Drive, Suite 1100
Berkeley Heights, NJ 07922
(973) 265-9901
jlevy@wshblaw.com

*Attorneys for Defendants-Appellants*
*Compact Information Systems, LLC,*
*Accudata Integrated Marketing, Inc.,*
*Alumnifinder, ASL Marketing, Inc.,*
*College Bound Selection Services,*
*Deepsync Labs, Homedata, and Student*
*Research Group (No. 25-1590)*

Ronald L. Davison
**STARR, GERN, DAVISON & RUBIN, P.C.**
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
(973) 403-9200
rdavison@starrgern.com

*Attorneys for Defendant-Appellant*
*Lighthouse List Company, LLC*
*(No. 25-1593)*

Christopher Nucifora
Timothy M. Ortolani
**KAUFMAN DOLOWICH LLP**
Court Plaza North
25 Main Street, Suite 500
Hackensack, NJ 07601
(201) 708-8207
cnucifora@kaufmandolowich.com tor-
tolani@kaufmandolowich.com

*Attorneys for Defendant-Appellant Spy*
*Dialer, Inc. (No. 25-1592)*

Jared M. Wichnovitz
**LAW OFFICES OF JARED M.
WICHNOVITZ, P.C.**
50 Harrison Street, Suite 206
P.O. Box 631
Hoboken, NJ 07030
(732) 765-2157
jared@wichnovitzlaw.com

*Attorney for Defendant-Appellant
Greenlight Venture Corp.
(No. 25-1677)*

William Wendell Cheney, III
Andrew W. Sheppard
**FREEMAN MATHIS & GARY, LLP**
3 Executive Campus, Suite 350
Cherry Hill, NJ 08002
(856) 406-1268, 1262
wcheney@fmglaw.com
Andrew.sheppard@fmglaw.com

*Attorney for Defendant-Appellant
First Direct, Inc. (No. 25-1676)*

# TABLE OF CONTENTS
# (JOINT APPENDIX)

**Page**

## Volume 1 of 4:
## (JA001 to JA142)

Joint Petition for Leave to File Appeal Under 28 U.S.C. §1292(b),
dated December 12, 2024......................................................................JA001

Order denying Defendants' Consolidated Motion to Dismiss,
dated November 26, 2024 ..................................................................JA073

Memorandum denying Consolidated Motion to Dismiss,
dated on November 26, 2024 ...........................................................JA082

Order pursuant to 28 U.S.C. §1292(b), dated December 2, 2024 ....................JA124

Order of USCA granting Petition for Leave to Appeal,
dated March 18, 2025 (Atlas Data Privacy Corporation v.
*We Inform, LLC* No. 24-0437-HB ("*We Inform*")(ECF 44)............................JA138

## Volume 2 of 4:
## (JA143 to JA481)

District Court Docket Entries for *Atlas Data Privacy Corp. et al. v.
We Inform, LLC, et al.*, No. 24-cv-04037-HB ..................................JA143

District Court Docket Entries for *Atlas Data Privacy Corp. et al. v.
Infomatics, LLC, et al.*, No. 24-cv-04041-HB ..................................JA152

District Court Docket Entries for *Atlas Data Privacy Corp., et al v.
The People Searchers, LLC, et al.*, No. 24-cv-04045-HB ...............................JA159

District Court Docket Entries for *Atlas Data Privacy Corp., et al v.
DM Group, Inc., et al.*, No. 24-cv-04075-HB  .................................JA167

District Court Docket Entries for *Atlas Data Privacy Corp., et al v.
Deluxe Corporation, et al.*, No. 24-cv-04080-HB ..........................JA177

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Quantarium Alliance, LLC, et al.*, No. 24-cv-04098-HB ................................ JA188

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Yardi Systems, Inc., et al.*,  No. 24-cv-04103-HB ........................... JA196

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Digital Safety Products, LLC, et al.*, No. 24-cv-04141-HB ........................... JA204

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Civil Data Research*, No. 24-cv-04143-HB ..................................... JA212

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Scalable Commerce, LLC*, No. 24-cv-04160-HB ........................... JA220

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Labels & Lists, Inc.*, No. 24-cv-04174-HB ..................................... JA228

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Innovis Data Solutions Inc.*, No. 24-cv-04176-HB ......................... JA238

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Accurate Append, Inc.*, No. 24-cv-04178-HB ................................. JA248

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Zillow, Inc., et al.*, No. 24-cv-04256-HB ........................................ JA256

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Equimine, Inc., et al.*, No. 24-cv-04261-HB ..................................... JA266

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Thomson Reuters Corp., et al.*, No. 24-cv-04269-HB ...................................... JA274

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Melissa Data Corp., et al.*, No. 24-cv-04292-HB .......................... JA286

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Restoration of America, et al.*, No. 24-cv-04324-HB ...................................... JA295

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. i360, LLC, et al.*, No. 24-cv-04345-HB ........................................................ JA304

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. GoHunt, LLC, et al.*, No. 24-cv-04380-HB .................................................. JA313

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Accuzip, Inc., et al.*, No. 24-cv-04383-HB ...................................................... JA321

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Synaptix Technology, LLC,et al.*, No. 24-cv-04385-HB ................................. JA329

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Joy Rockwell Enterprises, Inc., et al.*, No. 24-cv-04389-HB ......................... JA338

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Fortnoff Financial, LLC, et al.*, No. 24-cv-04390-HB .................................... JA346

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. MyHeritage, Ltd., et al.*, No. 24-cv-04392-HB................................................ JA355

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. E-Merges.com, Inc.*, No. 24-cv-04434-HB ...................................................... JA365

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Nuwber, Inc., et al.*, No. 24-cv-04609-HB ...................................................... JA373

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. RocketReach LLC, et al.*, No. 24-cv-04664-HB ............................................. JA382

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Belles Camp Communications, Inc., et al.*, No. 24-cv-04949-HB ................... JA392

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. PropertyRadar, Inc., et al.*, No. 24-cv-05600-HB ........................................... JA401

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. The Alesco Group, L.L.C., et al.*, No. 24-cv-05656-HB .................................. JA409

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Searchbug, Inc., et al.*, No. 24-cv-05658-HB ..................................................JA417

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Amerilist, Inc., et al.*, No. 24-cv-05775-HB ...............................................JA424

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. US Data Corporation, et al.*, No. 24-cv-07324-HB ..........................................JA431

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Smarty, LLC, et al.*, No. 24-cv-08075-HB.........................................................JA437

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Compact Information Systems, LLC, et al.*, No. 24-cv-08451-HB...................JA445

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Darkowl, LLC, et al.*, No. 1:24-cv-10600.........................................................JA454

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Spy Dialer, Inc., et al.*, No. 1:24-cv-11023-HB.................................................JA461

District Court Docket Entries for *Atlas Data Privacy Corp., et al v. Lighthouse List Company, LLC, et al.*, No. 24-cv-11443-HB .........................JA467

District Court Docket Entries for *Atlas Data Privacy Corp., et al. v. First Direct Inc., et al.*, No. 25-cv-01480-HB ...................................................JA472

District Court Docket Entries for *Atlas Data Privacy Corp., et al. v. Greenflight Venture Corp., et al.*, No. 25-cv-01517-HB.................................JA477

**Volume 3 of 4:**
**(JA482 to JA820)**

Complaint, dated February 23, 2024 (*We Inform*, ECF 1-1) ............................ JA482

Complaint, dated February 8, 2024, filed in *Atlas Data Privacy Corp. v. Zillow, Inc.*, No. 24-cv-04256-HB (ECF 1-1)) ................................................. JA510

Complaint, dated February 13, 2024, filed in *Atlas Data Privacy Corp. v. DM Group Inc.*, No. 24-cv 04075-HB (ECF 1-1) ............................................ JA534

Complaint, dated February 13, 2024, filed in *Atlas Data Privacy Corp. v. Innovis Data Solutions Inc.*, No. 24-cv-04176-HB (ECF 1-1) ......................... JA556

Complaint, dated October 16, 2024, filed in *Atlas Data Privacy Corp. v. Dark Owl, LLC*, No. 24-cv-10600-HB (ECF 1-1) ............................................ JA580

Complaint, dated February 15, 2024, filed in *Atlas Data Privacy Corp. v. Thomson Reuters Corp.*, No. 24-cv-04269-HB (ECF 1-2) .............................. JA605

Complaint, dated February 9, 2024, filed in *Atlas Data Privacy Corp. v. Smarty, LLC*, No. 24-cv-08075-HB (ECF 1-2) ................................................. JA630

Complaint, dated February 8, 2024, filed in *Atlas Data Privacy Corp. v. E-Merges.com Inc.*, No. 24-cv-04434-HB (ECF 1-1) ...................................... JA655

Complaint, dated February 8, 2024, filed in *Atlas Data Privacy Corp. v. Restoration of America, et al.*, No. 24-cv-04324-HB (ECF 1-1) ...................... JA679

Order setting deadlines for the filing of certain motions and briefs, and staying action until further order of the Court, dated May 8, 2024 (*We Inform,* ECF 15) ......................................................................................... JA704

Order setting facial challenge schedule and vacating Court's orders of May 8, 2024 and June 3, 2024, dated July 10, 2024 (*We Inform,* ECF 22) ......................................................................................... JA721

Order vacating Court's Order of July 10, 2024; setting schedule for facial challenge; and staying actions pending further order of the Court, dated August 15, 2024 (*We Inform,* ECF 24) ............................................................ JA738

Declaration of Serrin Turner in Support of Defendants' Consolidated
Motion to Dismiss, dated June 10, 2024, filed in *Atlas Data Privacy Corp. v.
Lightbox Parent, L.P.*, No. 24-cv-04105-HB ("*Lightbox*")
(ECF 27-1) ...................................................................................JA755

Exhibit 1 – Complaint in *Atlas Data Privacy Corporation v.
Blackbaud Inc.*, Case No. 24-cv-3993-HB (*Lightbox*, ECF 27-2) ..................JA756

\* \* \*

Exhibit 10 – Genova Burns LLC's 2023 "Annual Report of
Governmental Affairs Agent" filed with the New Jersey
Elections Law Enforcement Commission on February 14, 2024
(*Lightbox*, ECF 27-11)............................................................JA780

Exhibit 11 – Atlas Data Privacy Corporation's Filing
Certificate with the State of New Jersey Department of Treasury,
filed on January 12, 2024 (*Lightbox*, ECF 27-12)................................JA792

\* \* \*

Exhibit 13 – Article from New Jersey Cops Magazine entitled
"The Right to Privacy and to Attend the Mini Convention"
(*Lightbox*, ECF 27-14)............................................................JA796

Exhibit 14 – Exemplar of Atlas Daniel's Law Service Terms
(*Lightbox*, ECF 27-15)............................................................JA800

Exhibit 15 – Spreadsheet reflecting the timestamps of a sample
of 100 emails sent by Atlas Mail to Defendant CoStar Realty
Information, Inc. (*Lightbox*, ECF 27-16) ......................................JA815

Certificate of Service Pursuant to Federal Rule of Appellate
Procedure 25(d) ..................................................................JA819

**Volume 4 of 4**
**Filed Under Seal**
**(JA821 to JA870)**

Declaration of Serrin Turner in Support of Defendants' Consolidated
Motion to Dismiss, dated June 10, 2024 (*Lightbox*, ECF 28) .......................... JA821

Exhibit 2 –mortgage records (*Lightbox*, ECF 28-1) ............................. JA836

Exhibit 3 – mortgage records (*Lightbox*, ECF 28-2) ............................. JA838

Exhibit 4 –mortgage records (*Lightbox*, ECF 28-3)............................. JA849

Exhibit 5 –LinkedIn page (*Lightbox*, ECF 28-4)  ................................. JA851

Exhibit 6 - public realtor profile (*Lightbox*, ECF 28-5)  ........................ JA857

Exhibit 7 – Press release dated January 22, 2025
(*Lightbox*, ECF 28-6)............................................................................. JA860

Exhibit 8 – Retirement announcement (*Lightbox*, ECF 28-7)  .............. JA863

Exhibit 9 – Wells Fargo business profile (*Lightbox*, ECF 28-8) ........... JA865

Case 1:24-cv-04037-HB    Document 1-1    Filed 03/20/24    Page 29 of 60 PageID: 36
MRS-L-000379-24    02/23/2024 11:24:54 AM    Pg 1 of 28    Trans ID: LCV2024481360

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Scott Maloney, Justyna
Maloney, Patrick Colligan, Peter Andreyev,
and William Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>          Plaintiffs,<br>    v.<br><br>WE INFORM, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MORRIS COUNTY DOCKET NO.: MRS-L-_____-24<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

      Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Scott Maloney, Justyna Maloney, Patrick Colligan, Peter

1

Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.       In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.       This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.       The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.       With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

3

**New Jersey Passes Daniel's Law in 2020**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, et seq. and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.     Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

4

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety ... [a] judicial system cannot and should not live in fear."[2]

11.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6] The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

5

## THE PARTIES

### The Individual Plaintiffs

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her

6

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

18.     The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by

viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

19.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

20.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

21.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law

8

enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

22.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently serves as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm.

23.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

9

**Plaintiff Atlas and its Assignors**

24.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 18,443 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

27.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

28.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

29.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

30.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

31.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

11

# How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   We identify **data brokers that may be disclosing your personal information.** As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   You select **the data brokers to whom you want to send takedown notices.** We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   You review **takedown notice templates.** AtlasMail provides you with templates for takedown notice emails.

4   **You send takedown notices.** Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                              Next

32.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

12

# How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

- ✓ Upon completing this signup process, a new email account will be created for your personal use. It will be:
  **john.doe23@atlasmail.com**

- ✓ You can access this email account from within the Atlas web application.

- ✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

**Back**                              

33.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

13



34.     Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

14



15

**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L. 2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker inc.

Reply    Forward

35.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

36.    Defendant We Inform LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

37.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

38.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey. Those websites include:

weinform.org

39.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons). The following is a redacted example of the detailed information provided by Defendants,[8] in violation of Daniel's Law:

---

[8] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.

17



18







20

40.    As the screenshot above shows, visitors, users, or customers can not only obtain the protected information of the Individual Plaintiffs and Covered Persons but also the protected information of their family members.

41.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

43.    Venue is proper pursuant to <u>R.</u> 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

44.    As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* <u>N.J.S.A.</u> 47:1A-1, <u>et seq.</u> and <u>N.J.S.A.</u> 56:8-166.1).

45.    Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.    Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

21

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.     Certain provisions of the amended law, including changes to <u>N.J.S.A.</u> 56:8-166.1, went into effect immediately.

50.     As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[9]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and

---

[9] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

22

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d.  For the purposes of this section:

…"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.    Starting on or about December 27, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

52.    For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **To** | support@we-nform.org |
| **From** | Peter Andreyev <▮▮▮▮▮▮▮@atlasmail.com> |
| **Date** | Wed, Dec 27, 2023 6:19 PM UTC-0500 |

We Inform
December 27, 2023

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L. 2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Phone: ▮▮▮▮▮▮▮

Sincerely,
Peter Andreyev

23

53.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.     Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

55.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

56.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

<u>**COUNT ONE**</u>

**(Daniel's Law)**

57.     The allegations of the Complaint set forth above are included herein as if set forth at length.

58.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone

24

numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.    Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

63.    As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.  Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.  Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.  Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 23, 2024

By: /s/ *Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

26

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

<div align="right">

**GENOVA BURNS LLC**

</div>

Dated: February 23, 2024          By: */s/ Rajiv D. Parikh*

<div align="right">

Rajiv D. Parikh, Esq.

</div>

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to <u>R.</u> 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

<div align="right">

**GENOVA BURNS LLC**

</div>

Dated: February 23, 2024          By: */s/ Rajiv D. Parikh*

<div align="right">

Rajiv D. Parikh, Esq.

</div>

27

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

<div style="text-align:right">

**GENOVA BURNS LLC**

</div>

Dated: February 23, 2024

By: /s/ *Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy*
*Corporation, Jane Doe-1, a law*
*enforcement officer, Jane Doe-2, a law*
*enforcement officer, Edwin Maldonado,*
*Scott Maloney, Justyna Maloney, Patrick*
*Colligan, Peter Andreyev and William*
*Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> ZILLOW, INC., ZILLOW GROUP, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, BERGEN COUNTY DOCKET NO.: BER-L-_____-24 <br><br> **CIVIL ACTION** <br><br> **COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

1

Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.      In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

3

JA512

### New Jersey Passes Daniel's Law in 2020

8.    In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.    Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

10.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

4

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

### Violence Against Police Officers and Judges Has Not Stopped

13.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6] The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

5

## THE PARTIES

### The Individual Plaintiffs

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her

6

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

7

JA516

18.    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown

8

JA517

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than

9

33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

24.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

10

JA519

26.    As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 14,476 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.    The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29.    Defendants have not responded to these notices and, upon information and belief, have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New

11

Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.      Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify data brokers that may be disclosing your personal information.** As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select the data brokers to whom you want to send takedown notices.** We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review takedown notice templates.** AtlasMail provides you with templates for takedown notice emails.

4   **You send takedown notices.** Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

**Back**                                    **Next**

33.      AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

12

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

- ✓ Upon completing this signup process, a new email account will be created for your personal use. It will be:
  **john.doe23@atlasmail.com**

- ✓ You can access this email account from within the Atlas web application.

- ✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back                                   Next

34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select

13

JA522

individual recipients at a later page (as shown in the example copied below). Here, each of the

Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



35.    Any reply or response back from a data broker to the law enforcement officer or

other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully

featured email service provider, and its users can reply, forward, or use their AtlasMail account as

they would any other email account:

**AtlasMail**

<span style="float:right">✏ Compose</span>

🔍 Search Mail

☰ ALL MAIL      📧 INBOX      ➤ SENT      📣 ASSIGNMENT CONFIRMATIONS

| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
|----------|--------------------------------------------------------|----------|
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

1    2    3    ...    5    ...    16    >

15

**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L. 2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L. 2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply    Forward

36.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

37.    Defendant Zillow, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

JA525

38.   Defendant Zillow Group, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

39.   Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

40.   Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

zillow.com

zillowgroup.com

41.   In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

42.   Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

17

JA526

## JURISDICTION AND VENUE

43.　　This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

44.　　Venue is proper pursuant to <u>R.</u> 4:3-2, in that Bergen County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

45.　　As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* <u>N.J.S.A.</u> 47:1A-1, <u>et seq.</u> and <u>N.J.S.A.</u> 56:8-166.1).

46.　　Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

47.　　Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

48.　　This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

18

49.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was

passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was

thereafter signed by the Governor on July 20, 2023.

50.    Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1,

went into effect immediately.

51.    As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[8]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and
> not later than 10 business days following receipt thereof, a person, business,
> or association shall not disclose or redisclose on the Internet or otherwise
> make available, the home address or unpublished home telephone number
> of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this
> section shall be liable to the covered person, or the covered person's
> assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed
>> at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of
>> the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably
>> incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines
>> to be appropriate.
>
> d. For the purposes of this section:
>
>> ..."Disclose" shall mean to solicit, sell, manufacture, give, provide,
>> lend, trade, mail, deliver, transfer, post, publish, distribute, circulate,
>> disseminate, present, exhibit, advertise or offer, and shall include
>> making available or viewable within a searchable list or database,
>> regardless of whether a search of such list or database is actually
>> performed."

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

19

52.     Starting on or about December 31, 2023, each of the Individual Plaintiffs and all of

the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure

requests (via email) in accordance with Daniel's Law, using AtlasMail.

53.     For example, a true and correct copy of the email directly from Plaintiff Andreyev

(with personal information redacted) is pasted here:

### Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **To** | privacy@zillow.com |
| **From** | Peter Andreyev <▮▮▮▮▮▮@atlasmail.com> |
| **Date** | Sun, Dec 31, 2023 8:24 PM UTC-0500 |

Zillow
January 1, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Sincerely,
Peter Andreyev

54.     Defendants failed to respond to these notices and, upon information and belief,

cease the disclosure or re-disclosure on the Internet or the otherwise making available of the

protected information of the Individuals Plaintiffs and Covered Persons within the time period

required by Daniel's Law.

55.     All of the Covered Persons who sent their nondisclosure requests to Defendants

(not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

20

56.    The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

57.    The allegations of the Complaint set forth above are included herein as if set forth at length.

58.    The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.    As of the date of this filing, upon information and belief, Defendants still refuse to comply with Daniel's Law.  Upon information and belief, the protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.    Upon information and belief, Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

22

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 8, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 8, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

23

JA532

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 8, 2024          By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 8, 2024          By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

24

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Patrick Colligan, and Peter Andreyev*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, PATRICK COLLIGAN, and PETER ANDREYEV, <br><br>           Plaintiffs, <br>     v. <br><br> DM GROUP, INC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br>           Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MIDDLESEX COUNTY DOCKET NO.: MID-L-_____-24 <br><br> **CIVIL ACTION** <br><br> **COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane Doe-2 (a law enforcement officer), Patrick Colligan, and Peter Andreyev (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.      In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief

Case: 25-1570    Document: 29    Page: 71    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 3 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 4 of 23 PageID: 17

and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

### New Jersey Passes Daniel's Law in 2020

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

## THE PARTIES

### The Individual Plaintiffs

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

6

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey.  Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

18.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.  Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents

where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

19.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

20.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,532 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

21.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

22.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites, mailing lists or through other methods of disclosure.

23.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

Case: 25-1570    Document: 29    Page: 77    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 9 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 10 of 23 PageID: 23

24.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

25.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

26.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a Covered Person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

Case: 25-1570    Document: 29    Page: 78    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 10 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 11 of 23 PageID: 24

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4   **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                                                                          Next

27.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

10

JA543

Case: 25-1570    Document: 29    Page: 79    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 11 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 12 of 23 PageID: 25

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

✓ Upon completing this signup process, a new email account will be created for your personal use. It will be:
**john.doe23@atlasmail.com**

✓ You can access this email account from within the Atlas web application.

✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

**Back**                                                        **Next**

28.    Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

Case: 25-1570    Document: 29    Page: 80    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 12 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 13 of 23 PageID: 26



29.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 13 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 14 of 23 PageID: 27



JA546

Case: 25-1570    Document: 29    Page: 82    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 14 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 15 of 23 PageID: 28



30.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**<u>Defendants</u>**

31.    Defendant DM Group, Inc is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

32.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

33.     Defendants offer and engage in the disclosure of data and information through one or more websites, applications, or mailing lists, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

directmail.com

34.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

35.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

36.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

15

JA548

Case: 25-1570    Document: 29    Page: 84    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 16 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 17 of 23 PageID: 30

37.     Venue is proper pursuant to R. 4:3-2, in that Middlesex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

**FACTS COMMON TO ALL COUNTS**

38.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

39.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

40.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

41.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

42.      Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

43.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

44.  As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[8]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

> c. The court shall award:

>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

>> (2) punitive damages upon proof of willful or reckless disregard of the law;

>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and

>> (4) any other preliminary and equitable relief as the court determines to be appropriate.

> d.  For the purposes of this section:

>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

45.  Starting on or about January 7, 2024 each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

Case: 25-1570    Document: 29    Page: 86    Date Filed: 04/14/2025

MID-L-000990-24   02/13/2024 9:27:40 PM   Pg 18 of 22   Trans ID: LCV2024395215
Case 1:24-cv-04075-HB   Document 1-1   Filed 03/21/24   Page 19 of 23 PageID: 32

46.    For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **To** | support@directmail.com |
| **From** | Peter Andreyev <████████████@atlasmail.com> |
| **Date** | Sun, Jan 7, 2024 6:33 PM UTC-0500 |

DM Group
January 7, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ████████████████████

Sincerely,
Peter Andreyev

47.    Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

48.    Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

49.    All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

18

JA551

50.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## **COUNT ONE**

### **(Daniel's Law)**

51.     The allegations of the Complaint set forth above are included herein as if set forth at length.

52.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

53.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

54.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

55.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

56.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

57.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed

or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 13, 2024          By: */s/ Rajiv D. Parikh*  _____

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4,

Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 13, 2024          By: */s/ Rajiv D. Parikh*  _____

Rajiv D. Parikh, Esq.

21

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to <u>R.</u> 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 13, 2024                    By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.


## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to <u>Rule</u> 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 13, 2024                    By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

22

JA555

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Edwin Maldonado,
Scott Maloney, Justyna Maloney, Patrick
Colligan, Peter Andreyev and William
Sullivan*

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

---

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons,* JANE DOE-1, *a law enforcement officer,* JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> INNOVIS DATA SOLUTIONS, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities,* <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MORRIS COUNTY DOCKET NO.: MRS-L-_____-24 <br><br> **CIVIL ACTION** <br><br> **COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

<center>1</center>

Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their

undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.     In these tumultuous times, it is critical that the most sensitive personal information

of those who serve the public be protected from unwarranted disclosure.  As set forth below,

Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement

officers, and prosecutors – and their families – with the right to prevent the disclosure of their

home addresses and unpublished home telephone numbers, and to enforce those rights against

uncooperative profit-seeking data brokers.

2.     This complaint seeks to protect those important rights, against companies brokering

data and choosing profit and personal gain over a critical public interest and the unequivocal

mandate of the law.  Companies in the business of disclosing this protected information have

avoided accountability for far too long, proffering such information, including home addresses and

unpublished home telephone numbers, without sufficient regard for the risks and consequences

imposed upon individuals who serve critical judicial and law enforcement roles.

3.     The Legislature and Governor unanimously agree that the basic safety of those who

serve – and their families – must be assured.  Here, not only do the data brokers wantonly and

repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of

those who serve.  Our judges, law enforcement officers and prosecutors should receive the full

measure of protection afforded to them under the same laws they enforce for the safety of all

citizens.

4.     With this action, Plaintiffs seek to enforce the important rights granted to judges,

law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory

provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5. In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6. During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7. Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

3

**New Jersey Passes Daniel's Law in 2020**

8.     In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.     Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.     Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

4

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

### Violence Against Police Officers and Judges Has Not Stopped

13.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.    More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

## THE PARTIES

### The Individual Plaintiffs

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her

6

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17. Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

7

18.    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown

8

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT                    PAGE 10 OF 26

Case: 25-1570    Document: 29    Page: 99    Date Filed: 04/14/2025

Case 1:24-cv-04176-HB    Document 1-1    Filed 03/25/24    Page 11 of 26 PageID: 19
MRS-L-000285-24   02/13/2024 9:37:49 PM   Pg 9 of 24   Trans ID: LCV2024395223

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information.  Sergeant Maloney refused to comply with any demands.  He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand.  In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.  Responding officers arrested two men - who were armed - for unlawful possession of a firearm.  Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest.  Officer Maloney and her two young children were at home at the time.

22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey.  Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.  Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT

PAGE 11 OF 26

33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

24.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT                    PAGE 12 OF 26

26.    As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,599 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.    The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29.    Defendants have not responded to these notices and, upon information and belief, have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New

11

Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1    **We identify data brokers that may be disclosing your personal information.** As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2    **You select the data brokers to whom you want to send takedown notices.** We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3    **You review takedown notice templates.** AtlasMail provides you with templates for takedown notice emails.

4    **You send takedown notices.** Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                             Next

33.    AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

- ✓ Upon completing this signup process, a new email account will be created for your personal use. It will be:
  **john.doe23@atlasmail.com**
- ✓ You can access this email account from within the Atlas web application.
- ✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back  Next

34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select

13

individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



35.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT

PAGE 16 OF 26

**AtlasMail**                                                                        Compose

Q  Search in Mail

| ≡ ALL MAIL | ⌂ INBOX | ➤ SENT | 📢 ASSIGNMENT CONFIRMATIONS | |
|---|---|---|---|---|
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | 11:40 PM |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | 11:39 PM |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | 11:39 PM |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | 8:29 PM |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | 8:29 PM |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | 8:29 PM |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | Jan 3 |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | Jan 3 |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | Jan 3 |
| John Doe | | Data Subject Request - Redaction/nondisclosure Request | | Jan 3 |

‹  1  2  3  4  5  ...  16  ›

15

INNOVIS NOTICE OF REMOVAL                                    PAGE 17 OF 26
EXHIBIT A - SUMMONS AND COMPLAINT

**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113; P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply    Forward

36.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**<u>Defendants</u>**

37.    Defendant Innovis Data Solutions, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

38.    Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.    Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

innovis.com

40.    In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

41.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

17

43.    Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

44.    As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.    Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.    Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.    This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.    Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT                    PAGE 20 OF 26

50.    As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[8]

3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

c. The court shall award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d.  For the purposes of this section:

…"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.    Starting on or about January 9, 2024, each of the Individual Plaintiffs and all of the

Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests

(via email) in accordance with Daniel's Law, using AtlasMail.

52.    For example, a true and correct copy of the email directly from Plaintiff Sullivan

(with personal information redacted) is pasted here:

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

19

**Data Subject Request - Redaction/nondisclosure Request**

| | |
|---|---|
| **To** | privacy@innovis.com |
| **From** | William Sullivan <█████████@atlasmail.com> |
| **Date** | Thu, Jan 18, 2024 8:33 PM UTC-0500 |

Innovis
January 19, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: William Sullivan

Home Address: ███████████████████

Sincerely,
William Sullivan

53.     Defendants failed to respond to these notices and, upon information and belief, cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

55.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

<u>**COUNT ONE**</u>

**(Daniel's Law)**

56.     The allegations of the Complaint set forth above are included herein as if set forth at length.

57.    The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

58.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

59.    As of the date of this filing, upon information and belief, Defendants still refuse to comply with Daniel's Law.  Upon information and belief, the protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

60.    Upon information and belief, Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

61.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

21

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT

PAGE 23 OF 26

C.   Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D.   Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.   Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.   Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.   Awarding such other and further relief against Defendants as the Court deems equitable and just.

22

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 13, 2024                    By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 13, 2024                    By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

23

INNOVIS NOTICE OF REMOVAL
EXHIBIT A - SUMMONS AND COMPLAINT                    PAGE 25 OF 26

Case 1:24-cv-04176-HB    Document 1-1    Filed 03/25/24    Page 26 of 26 PageID: 34
MRS-L-000285-24   02/13/2024 9:37:49 PM   Pg 24 of 24   Trans ID: LCV2024395223

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

GENOVA BURNS LLC

Dated: February 13, 2024          By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

**CERTIFICATION PURSUANT TO RULE 1:38-7(b)**

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

GENOVA BURNS LLC

Dated: February 13, 2024          By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

24

ESX-L-007210-24   10/16/2024 11:47:24 PM   Pg 1 of 25   Trans ID: LCV20242664559
Case 1:24-cv-10600-HB    Document 1-1    Filed 11/20/24    Page 3 of 31 PageID: 25

**PEM LAW LLP**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
Jessica A. Merejo (288592020)
1 Boland Drive, Suite 101
West Orange, NJ 07052
Tel.: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Patrick Colligan, and Peter
Andreyev*

**BIRD MARELLA RHOW
LINCENBERG DROOKS NESSIM LLP**
Ekwan E. Rhow (*pro hac vice* to be filed)
Elliot C. Harvey Schatmeier (*pro hac vice* to
  be filed)
1875 Century Park East, 23rd Fl
Los Angeles, CA 90067
Tel.: (310) 201-2100
erhow@birdmarella.com
ehs@birdmarella.com

**MORGAN & MORGAN P.A.
COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* to be filed)
Ryan J. McGee (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, PATRICK COLLIGAN, and PETER ANDREYEV,<br><br>    Plaintiffs,<br><br>    v.<br><br>DARKOWL, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, ESSEX COUNTY DOCKET NO.: ESX-L-_____-24<br><br>    <u>**CIVIL ACTION**</u><br><br>    **COMPLAINT** |

1

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as the assignee of individuals who are Covered Persons under Daniel's Law, along with Patrick Colligan and Peter Andreyev (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## **INTRODUCTION**

1.      In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights against companies brokering data and choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants.  Our judges, law enforcement officers, and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

**BACKGROUND**

**Passage of Daniel's Law in New Jersey**

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer had fled.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to their home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7.    Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the Internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8.    In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020.  P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, et seq. and <u>N.J.S.A.</u> 56:8-166.1. Daniel's Law allows current and former public servants—including judges, law enforcement officers, and prosecutors—and their eligible family members (*i.e.*, "covered persons") to send written nondisclosure requests to data brokers.  Once a 10-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9.    Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

10.    Data brokers must cease disclosure of this protected information within 10 business days of receiving a written nondisclosure request from a covered person.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

11.     To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a covered person or by the covered person's assignee.  N.J.S.A. 56:8-166.1(b).

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

12.     Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13.     The federal bill, which had broad bipartisan support in both the House and Senate, protected the personally identifiable information of judges and their immediate family from disclosure by data brokers.  It also allowed federal judges to redact their personal information displayed on federal government websites.

14.     In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

15.     Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat.  These public servants put their lives on the line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.

murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]  On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

16.    More recently, a disgruntled litigant hunted down and killed a Maryland Judge at his home after an adverse child custody ruling.[6]  This killing followed a similar tragedy in Wisconsin in 2022, where the perpetrator killed a retired Wisconsin Circuit Court Judge out of spite for his handling of a criminal case in 2005.[7]

17.    These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers.  These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service.  This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

---

[5] https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.
[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.
[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

## THE PARTIES

### The Individual Plaintiffs

18.     Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey.   From June 2014 to April 2024, Detective Colligan served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.   During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.   The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

19.     Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.   Since May 2024, Officer Andreyev has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.   During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.   Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm.

### Plaintiff Atlas and its Assignors

20.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

21.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,014 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a

significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

22.    Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "covered person" set forth in Daniel's Law, N.J.S.A. 56:8-166.1.

23.    Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

24.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

25.    Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

26.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute.

Case: 25-1570    Document: 29    Page: 123    Date Filed: 04/14/2025

ESX-L-007210-24   10/16/2024 11:47:24 PM   Pg 9 of 25   Trans ID: LCV20242664559
Case 1:24-cv-10600-HB    Document 1-1    Filed 11/20/24    Page 11 of 31 PageID: 33

Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

27.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

28.    Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law.  Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:

# How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1  **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2  **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3  **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4  **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                                                    Next

Case: 25-1570    Document: 29    Page: 125    Date Filed: 04/14/2025

ESX-L-007210-24   10/16/2024 11:47:24 PM   Pg 11 of 25   Trans ID: LCV20242664559
Case 1:24-cv-10600-HB    Document 1-1    Filed 11/20/24    Page 13 of 31 PageID: 35

29.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each Covered Person receives his or her own AtlasMail account, with a unique inbox address (*e.g.*, john.doe23@atlasmail.com) for personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



30.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the Covered Person can choose whether or not to send takedown notices.  If the Covered Person chooses not to

send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

ESX-L-007210-24   10/16/2024 11:47:24 PM   Pg 13 of 25   Trans ID: LCV20242664559
Case 1:24-cv-10600-HB    Document 1-1    Filed 11/20/24    Page 15 of 31 PageID: 37

31.    Any reply or response back from a data broker to the Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully-featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:



Case: 25-1570    Document: 29    Page: 128    Date Filed: 04/14/2025

ESX-L-007210-24   10/16/2024 11:47:24 PM   Pg 14 of 25   Trans ID: LCV20242664559
Case 1:24-cv-10600-HB    Document 1-1    Filed 11/20/24    Page 16 of 31 PageID: 38

---

**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

[Reply]  [Forward]

---

32.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

33.     Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing.  However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written

assignments and relevant information for each of the Covered Persons.  Our courts have already approved this privacy-protecting approach.[8]

34.     In order to facilitate the provision of the Covered Persons' relevant information to Defendants pursuant to an appropriate protective order, Plaintiffs have provided Defendants with a proposed Protective Order with service of this Complaint.

**Defendants**

35.     Defendant DarkOwl, LLC ("DarkOwl") is a Colorado corporation that has a principal place of business at 1775 N. Sherman Street, Suite 1790, Denver, Colorado 80203, and transacts business within the State of New Jersey.  DarkOwl discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

36.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

---

[8] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order.  *Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al.*, Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

Case: 25-1570    Document: 29    Page: 130    Date Filed: 04/14/2025

ESX-L-007210-24   10/16/2024 11:47:24 PM   Pg 16 of 25   Trans ID: LCV20242664559
Case 1:24-cv-10600-HB    Document 1-1    Filed 11/20/24    Page 18 of 31 PageID: 40

37.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  These websites include darkowl.com.

38.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[9] in violation of Daniel's Law:



_____

[9] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.

39.     Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

40.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

41.     Venue is proper pursuant to R. 4:3-2, in that Essex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

42.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

43.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

44.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

45.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

46.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

47.    Certain provisions of the amended law, including changes to <u>N.J.S.A.</u> 56:8-166.1, went into effect immediately.

48.    As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[10]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> > (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> >
> > (2) punitive damages upon proof of willful or reckless disregard of the law;
> >
> > (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
> >
> > (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d.  For the purposes of this section:
>
> > . . . "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database,

---

[10] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

regardless of whether a search of such list or database is actually performed."

49.     Starting on or about December 30, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

50.     For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **From** | Peter Andreyev ███████████████████████ |
| **To** | info@darkowl.com |
| **Date** | Mon, Jan 1, 2024 4:52 PM UTC-0500 |

DarkOwl
January 1, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ████████████████████████████

Sincerely,
Peter Andreyev

51.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.  Thus, Defendants' disclosure or redisclosure of protected information of the Individual Plaintiffs and Covered Persons following the statutory takedown period of ten (10) business days violates Daniel's Law.

52.    Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, re-disclosed or otherwise made available, despite Defendants' receipt of requests for nondisclosure more than ten business days ago.

53.    All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas.  All of the assignments were completed in writing before the date of the filing of the initial Complaint.

54.    Following the entry of a protective order filed in this Court, Plaintiffs will provide under a confidential designation a full and complete list of the following:

    a.    Names of each of the 19,014 assignors referenced in paragraph 21; and

    b.    The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

55.    The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

56.     The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

57.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

58.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

59.     Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, re-disclosed or otherwise made available, despite Defendants' receipt of requests for nondisclosure more than ten business days ago.

60.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

61.     Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes willful or reckless disregard of the law.

62.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully submitted,

**PEM LAW LLP**

Dated: October 16, 2024

By: /s/ *Rajiv D. Parikh*_____

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
1 Boland Drive, Suite 101
West Orange, NJ 07052
Tel: (973) 577-5500
rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**MORGAN & MORGAN P.A.**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* to be filed)
Ryan J. McGee (*pro hac vice* to be filed)
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

**BIRD MARELLA RHOW LINCENBERG**
**DROOKS NESSIM LLP**
Ekwan E. Rhow (*pro hac vice* to be filed)
Elliot C. Harvey Schatmeier (*pro hac vice* to
be filed)
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Tel: (310) 201-2100
erhow@birdmarella.com
ehs@birdmarella.com

*Counsel for Plaintiffs*

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**PEM LAW LLP**

Dated: October 16, 2024

By: */s/ Rajiv D. Parikh*
Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**PEM LAW LLP**

Dated: October 16, 2024

By: */s/ Rajiv D. Parikh*
Rajiv D. Parikh, Esq.

## <u>CERTIFICATION PURSUANT TO RULE 1:38-7(b)</u>

Pursuant to <u>Rule</u> 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**PEM LAW LLP**

Dated: October 16, 2024                    By: *<u>/s/ Rajiv D. Parikh</u>*
                                                       Rajiv D. Parikh, Esq.

Case: 25-1570   Document: 29   Page: 140   Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 1 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 3 of 91 PageID: 17

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev and William Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>　　　　　　Plaintiffs,<br>　　　v.<br><br>THOMSON REUTERS CORPORATION, THOMSON REUTERS HOLDINGS INC., THOMSON REUTERS CANADA LIMITED, THOMSON REUTERS APPLICATIONS INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>　　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MORRIS COUNTY DOCKET NO.: MRS-L-_____-24<br><br><u>**CIVIL ACTION**</u><br><br>**COMPLAINT** |

　　　　Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.    In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.    This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.    The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.    With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory

provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.     Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

**New Jersey Passes Daniel's Law in 2020**

8.     In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.     Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.    Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.    The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.    The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.    Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland

Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where

the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

### THE PARTIES

#### The Individual Plaintiffs

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a

decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer

Doe-1 participated in a task force that targeted a major criminal organization operating in the

state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's

leadership, an individual with an extensive criminal history including threats of violence.  In the

subsequent investigation, digital devices recovered from the organization's leadership were

analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1

lives in the home with her spouse and their young child.  Evidence recovered in the investigation

included night-time photography of the young child's bedroom and playroom windows, with the

light on while the child was playing inside.  Further investigation revealed that the criminal

organization's leadership had hired a private investigator who searched online data broker websites

to obtain the officer's home address.  Having identified her home address, text messages confirmed

that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her

home, immediately prior to the task force initiating arrests.

---

[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

Case: 25-1570   Document: 29   Page: 146   Date Filed: 04/14/2025

MRS-L-000320-24  02/15/2024 2:22:02 PM  Pg 7 of 25  Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 9 of 91 PageID: 23

16.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000.  After a few months on the job, he was assigned to street crimes, where he excelled at field work.  In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey.  He worked with the task force for the next two years.  During that time period, he received multiple credible death threats from MS-13 members.  Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work.  In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members

Case: 25-1570   Document: 29   Page: 147   Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 8 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 10 of 91 PageID: 24

targeted Detective Maldonado's mother instead.  They intended to burn down her building with her inside, but set fire to an adjacent building by mistake.  Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps.  Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a

JA612

Case: 25-1570    Document: 29    Page: 148    Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 9 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 11 of 91 PageID: 25

married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information.  Sergeant Maloney refused to comply with any demands.  He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand.  In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest.  Officer Maloney and her two young children were at home at the time.

22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey.  Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family

as a result of his public service.  The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23.     Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.  Officer Andreyev currently serves as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm.

24.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

26.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,600 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

29.     Defendants have not responded to these notices and, upon information and belief, have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law.  Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

Case: 25-1570    Document: 29    Page: 152    Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 13 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 15 of 91 PageID: 29

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4   **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                                    Next

33.    AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

13

JA617

Case: 25-1570    Document: 29    Page: 153    Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 14 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 16 of 91 PageID: 30

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

✓ Upon completing this signup process, a new email account will be created for your personal use. It will be:
**john.doe23@atlasmail.com**

✓ You can access this email account from within the Atlas web application.

✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

**Back**                                                    **Next**

34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below).  Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

14

Case: 25-1570    Document: 29    Page: 154    Date Filed: 04/14/2025

MRS-L-000320-24    02/15/2024 2:22:02 PM   Pg 15 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 17 of 91 PageID: 31



35.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 16 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 18 of 91 PageID: 32



Case: 25-1570    Document: 29    Page: 156    Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 17 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 19 of 91 PageID: 33



36.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**<u>Defendants</u>**

37.    Defendant Thomson Reuters Corporation is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

17

38.     Defendant Thomson Reuters Holdings Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

39.     Defendant Thomson Reuters Canada Limited is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

40.     Defendant Thomson Reuters Applications Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

41.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

42.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

thomsonreuters.com

43.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

44.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

45.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

46.     Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

47.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

48.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

49.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

50.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver,

transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

52.    Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

53.    As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[8]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section:
>
>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

54.    Starting on or about January 9, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

55.    For example, a true and correct copy of the email directly from Plaintiff Sullivan (with personal information redacted) is pasted here:

### Data Subject Request - Redaction/nondisclosure Request

| | |
|---|---|
| **To** | privacy.issues@thomsonreuters.com |
| **From** | William Sullivan <██████████@atlasmail.com> |
| **Date** | Tue, Jan 16, 2024 4:12 AM UTC-0500 |

Thomson Reuters
January 16, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: William Sullivan

Home Address: ████████████████████

Sincerely,
William Sullivan

56.    Defendants failed to respond to these notices and, upon information and belief, cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

57.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

58.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

59.     The allegations of the Complaint set forth above are included herein as if set forth at length.

60.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

61.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

62.     As of the date of this filing, upon information and belief, Defendants still refuse to comply with Daniel's Law.  Upon information and belief, the protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

63.     Upon information and belief, Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

64.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have

suffered damages, and request all available relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the

disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home

addresses, and unpublished home telephone numbers wherever disclosed or re-

disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at

"$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court,

for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation

costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and

remove the Individual Plaintiffs' and the Covered Persons' protected information

wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to

comply with Daniel's Law, including the appointment of a qualified independent

expert to ensure that Defendants prospectively maintain compliance with Daniel's

Law; and

G. Awarding such other and further relief against Defendants as the Court deems

equitable and just.

Case: 25-1570    Document: 29    Page: 163    Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 24 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 26 of 91 PageID: 40

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 15, 2024

By: */s/ Rajiv D. Parikh* _____

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

<u>**DESIGNATION OF TRIAL COUNSEL**</u>

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 15, 2024

By: */s/ Rajiv D. Parikh* _____

Rajiv D. Parikh, Esq.

24

JA628

Case: 25-1570    Document: 29    Page: 164    Date Filed: 04/14/2025

MRS-L-000320-24   02/15/2024 2:22:02 PM   Pg 25 of 25   Trans ID: LCV2024415722
Case 1:24-cv-04269-HB   Document 1-2   Filed 03/27/24   Page 27 of 91 PageID: 41

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to <u>R.</u> 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 15, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to <u>Rule</u> 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 15, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

JA629

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter Andreyev, and William Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>SMARTY, LLC, SMARTYSTREETS, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>　　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MERCER COUNTY DOCKET NO.: MER-L-_____-24<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

　　　　Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter

1

Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1. In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2. This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3. The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4. With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

3

### New Jersey Passes Daniel's Law in 2020

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**<u>Violence Against Police Officers and Judges Has Not Stopped</u>**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

**THE PARTIES**

**The Individual Plaintiffs**

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her

6

JA635

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

7

JA636

18.    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown

8

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

22.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

9

23.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

24.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 14,532 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

10

JA639

27.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

28.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

29.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

30.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

31.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

11

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4   **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                        Next

32.     AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

12

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

- ✓ Upon completing this signup process, a new email account will be created for your personal use. It will be:
  **john.doe23@atlasmail.com**

- ✓ You can access this email account from within the Atlas web application.

- ✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back                                          Next

33.    Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

13

34.     Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:

14



AtlasMail

Compose

Search in Mail

ALL MAIL | INBOX | SENT | ASSIGNMENT CONFIRMATIONS

| | | |
|---|---|---|
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

< 1 2 3 4 5 ... 16 >

## Redaction/Nondisclosure Request Confirmation

| | |
|---|---|
| To | john.doe23@atlasmail.com |
| From | privacy@exampledatabroker.com |
| Date | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L. 2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply    Forward

35.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

### **Defendants**

36.    Defendant Smarty, LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

JA645

37.     Defendant SmartyStreets, LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

38.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

smarty.com

40.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[8] in violation of Daniel's Law:

---

[8] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.



41.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

<div align="center">

**JURISDICTION AND VENUE**

</div>

42.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

<div align="center">18</div>

43.     Venue is proper pursuant to R. 4:3-2, in that Mercer County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

44.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

19

JA648

50.     As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[9]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d.  For the purposes of this section:
>
>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.     Starting on or about December 28, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

52.     For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

---

[9] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

20

**Data Subject Request – Redaction/nondisclosure Request**

| | |
|---|---|
| **To** | support@smarty.com |
| **From** | Peter Andreyev <████████@atlasmail.com> |
| **Date** | Sat, Dec 30, 2023 10:32 AM UTC-0500 |

Smarty
December 30, 2023

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ████████████████████

Sincerely,
Peter Andreyev

53.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.     Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law. Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

55.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

56.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

21

## COUNT ONE

### (Daniel's Law)

57.     The allegations of the Complaint set forth above are included herein as if set forth at length.

58.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

63.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

22

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 9, 2024      By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)

<u>**DESIGNATION OF TRIAL COUNSEL**</u>

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 9, 2024      By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

24

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 9, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 9, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

25

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 1 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 1 of 26 PageID: 6

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

*Attorneys for Plaintiffs Atlas Data Privacy
Corporation, Jane Doe-1, a law
enforcement officer, Jane Doe-2, a law
enforcement officer, Edwin Maldonado,
Scott Maloney, Justyna Maloney, Patrick
Colligan, Peter Andreyev, and William
Sullivan*

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>          Plaintiffs,<br><br>   v.<br><br>E-MERGES.COM INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, BERGEN COUNTY DOCKET NO.: BER-L-_____-24<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

JA655

Case: 25-1570    Document: 29    Page: 191    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 2 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 2 of 26 PageID: 7

Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their

undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.      In these tumultuous times, it is critical that the most sensitive personal information

of those who serve the public be protected from unwarranted disclosure.  As set forth below,

Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement

officers, and prosecutors – and their families – with the right to prevent the disclosure of their

home addresses and unpublished home telephone numbers, and to enforce those rights against

uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering

data and choosing profit and personal gain over a critical public interest and the unequivocal

mandate of the law.  Companies in the business of disclosing this protected information have

avoided accountability for far too long, proffering such information, including home addresses and

unpublished home telephone numbers, without sufficient regard for the risks and consequences

imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who

serve – and their families – must be assured.  Here, not only do the data brokers wantonly and

repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of

those who serve.  Our judges, law enforcement officers and prosecutors should receive the full

measure of protection afforded to them under the same laws they enforce for the safety of all

citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges,

law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory

provisions, Atlas brings this action as an assignee for certain individuals, including many family

Case: 25-1570     Document: 29     Page: 192     Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 3 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 3 of 26 PageID: 8

members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.     In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home.  Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.     During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her.  Instead, he murdered the Judge's son and almost succeeded in killing her husband as well.  Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.     Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, <u>et</u> <u>seq.</u> and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

4

Case: 25-1570    Document: 29    Page: 194    Date Filed: 04/14/2025

BER-L-000854-24  02/08/2024 3:32:22 PM  Pg 5 of 24  Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 5 of 26 PageID: 10

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

Case: 25-1570    Document: 29    Page: 195    Date Filed: 04/14/2025

BER-L-000854-24  02/08/2024 3:32:22 PM  Pg 6 of 24  Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 6 of 26 PageID: 11

## THE PARTIES

### The Individual Plaintiffs

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

6

Case: 25-1570    Document: 29    Page: 196    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 7 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 7 of 26 PageID: 12

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.    Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000.  After a few months on the job, he was assigned to street crimes, where he excelled at field work.  In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey.  He worked with the task force for the next two years.  During that time period, he received multiple credible death threats from MS-13 members.  Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work.  In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead.  They intended to burn down her building with her inside, but set fire to an adjacent building by mistake.  Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps.  Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown

Case: 25-1570    Document: 29    Page: 198    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 9 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 9 of 26 PageID: 14

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

22. Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23. Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than

33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

24.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

26.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 18,369 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites, mailing lists or through other methods of disclosure.

29.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New

Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a Covered Person under Daniel's Law.   Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:



33.    AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

Case: 25-1570    Document: 29    Page: 202    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 13 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 13 of 26 PageID: 18

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select

Case: 25-1570    Document: 29    Page: 203    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 14 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 14 of 26 PageID: 19

individual recipients at a later page (as shown in the example copied below).  Here, each of the
Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



35.      Any reply or response back from a data broker to the law enforcement officer or
other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully
featured email service provider, and its users can reply, forward, or use their AtlasMail account as
they would any other email account:

14

JA668

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 15 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 15 of 26 PageID: 20





36.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**<u>Defendants</u>**

37.     Defendant E-MERGES.COM INC. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

Case: 25-1570    Document: 29    Page: 206    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 17 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 17 of 26 PageID: 22

38.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or mailing lists, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

emerges.com

40.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

41.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

17

43.    Venue is proper pursuant to R. 4:3-2, in that Bergen County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

### FACTS COMMON TO ALL COUNTS

44.    As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.    Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.    Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.    This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.    Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

50.     As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[8]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>>
>> (2) punitive damages upon proof of willful or reckless disregard of the law;
>>
>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>>
>> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d.  For the purposes of this section:
>
>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.     Starting on or about December 25, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

Case: 25-1570    Document: 29    Page: 209    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 20 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 20 of 26 PageID: 25

52.     For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request – Redaction/nondisclosure Request

To        data@emerges.com
From      Peter Andreyev <███████████@atlasmail.com>
Date      Mon, Dec 25, 2023 5:40 AM

eMerges.com
December 25, 2023

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Phone:█████████

Sincerely,
Peter Andreyev

53.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.     Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law.  Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

JA674

Case: 25-1570    Document: 29    Page: 210    Date Filed: 04/14/2025

BER-L-000854-24   02/08/2024 3:32:22 PM   Pg 21 of 24   Trans ID: LCV2024340504
Case 1:24-cv-04434-HB   Document 1-1   Filed 04/01/24   Page 21 of 26 PageID: 26

55.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

56.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

57.     The allegations of the Complaint set forth above are included herein as if set forth at length.

58.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

63.     As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A.  Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B.  Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C.  Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D.  Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.  Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.  Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.  Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 7, 2024                    By: */s/ Rajiv D. Parikh* _____

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777

*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

*(pro hac vice motions to be filed)*

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 7, 2024                    By: */s/ Rajiv D. Parikh* _____

Rajiv D. Parikh, Esq.

23

JA677

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: */s/ Rajiv D. Parikh*

Rajiv D. Parikh, Esq.

24

JA678

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN,<br><br>Plaintiffs,<br><br>v.<br><br>RESTORATION OF AMERICA, VOTER REFERENCE FOUNDATION LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MONMOUTH COUNTY DOCKET NO.: MON-L-_____-24<br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

    Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

JA679

Colligan, and William Sullivan (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

## INTRODUCTION

1.   In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure.  As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors – and their families – with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.   This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

3.   The Legislature and Governor unanimously agree that the basic safety of those who serve – and their families – must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve.  Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.   With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family

2

members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.     In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.     During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.     Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.     In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.     Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.     Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

4

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**Violence Against Police Officers and Judges Has Not Stopped**

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

5

Case: 25-1570   Document: 29   Page: 219   Date Filed: 04/14/2025

## THE PARTIES

### The Individual Plaintiffs

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her

6

MON-L-000510-24   02/08/2024 9:42:28 AM   Pg 7 of 25   Trans ID: LCV2024346216

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

MON-L-000510-24   02/08/2024 9:42:28 AM   Pg 8 of 25   Trans ID: LCV2024346216

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown

8

messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21. Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

22. Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

23. Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the

9

New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

24.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

25.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 18,966 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

26.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

27.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making

10

Case: 25-1570   Document: 29   Page: 224   Date Filed: 04/14/2025

available their protected information on one or more of Defendants' websites or through other methods of disclosure.

28.    Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

29.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

30.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

31.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

11

JA689

MON-L-000510-24   02/08/2024 9:42:28 AM   Pg 12 of 25   Trans ID: LCV2024346216

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify data brokers that may be disclosing your personal information.** As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select the data brokers to whom you want to send takedown notices.** We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review takedown notice templates.** AtlasMail provides you with templates for takedown notice emails.

4   **You send takedown notices.** Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                    **Next**

32.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

12

JA690

MON-L-000510-24   02/08/2024 9:42:28 AM   Pg 13 of 25   Trans ID: LCV2024346216

# How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

- ✓ Upon completing this signup process, a new email account will be created for your personal use. It will be: **john.doe23@atlasmail.com**

- ✓ You can access this email account from within the Atlas web application.

- ✓ This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back

Next

33.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.

13

MON-L-000510-24   02/08/2024 9:42:28 AM   Pg 14 of 25   Trans ID: LCV2024346216



34.     Any reply or response back from a data broker to the law enforcement officer or
other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully
featured email service provider, and its users can reply, forward, or use their AtlasMail account as
they would any other email account:

14

**AtlasMail**

`[Compose]`

Q   Search In Mail

☰ ALL MAIL        ▢ INBOX        ➤ SENT        📣 ASSIGNMENT CONFIRMATIONS

| | | |
|---|---|---|
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:38 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:38 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

‹   1   2   3   4   5   ...   15   ›

15

Date Filed: 04/14/2025     Page: 228     Document: 29     Case: 25-1570

JA693

Date Filed: 04/14/2025        Page: 229        Document: 29        Case: 25-1570

**Redaction/Nondisclosure Request Confirmation**

| | |
|---|---|
| **To** | john.doe23@atlasmail.com |
| **From** | privacy@exampledatabroker.com |
| **Date** | Fri, Jan 26, 2024 8:14 PM |

Dear John,

Thank you for your redaction/nondisclosure request pursuant New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act") and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended, "Chapter 226"). We are writing to confirm that Example Data Broker Inc. will honor your request as required by the Act and Chapter 226.

Sincerely,

Example Data Broker Inc.

Reply    Forward

35.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

36.     Defendant Restoration of America is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

JA694

37.   Defendant Voter Reference Foundation LLC is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

38.   Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.   Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

voteref.com

40.   In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[8] in violation of Daniel's Law:

---

[8] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning Rule 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.

17

MON-L-000510-24    02/08/2024 9:42:28 AM    Pg 18 of 25    Trans ID: LCV2024346216



41.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

18

Case: 25-1570    Document: 29    Page: 231    Date Filed: 04/14/2025

43.     Venue is proper pursuant to R. 4:3-2, in that Monmouth County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.   In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

44.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

19

JA697

50.     As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:[9]

3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

c. The court shall award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section:

..."Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.     Starting on or about December 27, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

52.     For example, a true and correct copy of the email directly from Plaintiff Colligan (with personal information redacted) is pasted here:

---

[9] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

20

Case: 25-1570   Document: 29   Page: 233   Date Filed: 04/14/2025

| | |
|---|---|
| To | privacy@voteref.com |
| From | Patrick Colligan <███████████@atlasmail.com> |
| Date | Wed, Dec 27, 2023 10:01 AM |

VoteRef
December 27, 2023

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Patrick Colligan

Home Address: ███████████████████

Sincerely,
Patrick Colligan

53.   Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.   Even as of the date of this filing, Defendants still refuse to comply with Daniel's Law.  Protected information of the Individual Plaintiffs and those Covered Persons who assigned Atlas their Daniel's Law claims against Defendants remains available from Defendants using Defendants' search tools or other means of disclosure.

55.   All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

21

JA699

Case: 25-1570   Document: 29   Page: 235   Date Filed: 04/14/2025

56.    The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

57.    The allegations of the Complaint set forth above are included herein as if set forth at length.

58.    The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

59.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

60.    As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

61.    Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

62.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

63.    As of the date of this filing, Defendants still refuse to comply with Daniel's Law. The protected information of the Individual Plaintiffs and the Covered Persons remains disclosed

22

or otherwise made available despite proper requests for nondisclosure in violation of Daniel's Law. As such, Plaintiffs request that the Court enter all appropriate legal and equitable relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B. Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C. Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D. Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E. Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F. Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G. Awarding such other and further relief against Defendants as the Court deems equitable and just.

23

Respectfully Submitted,

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: /s/ Rajiv D. Parikh

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777

*Attorneys for Plaintiffs*

**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

*(pro hac vice motions to be filed)*

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**GENOVA BURNS LLC**

Dated: February 7, 2024

By: /s/ Rajiv D. Parikh

Rajiv D. Parikh, Esq.

24

JA702

MON-L-000510-24  02/08/2024 9:42:28 AM  Pg 25 of 25  Trans ID: LCV2024346216

### CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties hereto is not the subject of any other action pending in any other Court or of a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief, no other action or arbitration proceeding between the parties hereto is contemplated. Further, other than the parties set forth in this pleading and the previous pleadings, if any, at the present time we know of no other parties that should be joined in the within action.

GENOVA BURNS LLC

Dated: February 7, 2024                    By: /s/ Rajiv D. Parikh

Rajiv D. Parikh, Esq.

### CERTIFICATION PURSUANT TO RULE 1;38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

GENOVA BURNS LLC

Dated: February 7, 2024                    By: /s/ Rajiv D. Parikh

Rajiv D. Parikh, Esq.

25

JA703

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : : : | CIVIL ACTION |
| v. | : : | NO. 24-3993 |
| BLACKBAUD, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : : : | CIVIL ACTION |
| v. | : : | NO. 24-3998 |
| WHITEPAGES, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : : : | CIVIL ACTION |
| v. | : : | NO. 24-4000 |
| HIYA, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : : : | CIVIL ACTION |
| v. | : : | NO. 24-4037 |
| WE INFORM, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : : : | CIVIL ACTION |
| v. | : : | NO. 24-4041 |
| INFOMATICS, LLC, et al. | : | |

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :           NO. 24-4045
THE PEOPLE SEARCHERS, LLC,        :
et al.                            :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :           NO. 24-4073
COMMERCIAL REAL ESTATE            :
EXCHANGE, INC., et al.            :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :           NO. 24-4075
DM GROUP, INC., et al.            :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :           NO. 24-4077
CARCO GROUP INC., et al.          :
```
_____

```
ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :           NO. 24-4080
DELUXE CORPORATION, et al.        :
```
_____

JA705

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4095
TWILIO INC., et al.           :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4096
DELVEPOINT, LLC, et al.       :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4098
QUANTARIUM ALLIANCE, LLC,     :
et al.                        :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4103
YARDI SYSTEMS, INC., et al.   :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4104
6SENSE INSIGHTS, INC.,        :
et al.                        :
_____
```

-3-

```
ATLAS DATA PRIVACY                  :           CIVIL ACTION
CORPORATION, et al.                 :
                                    :
             v.                     :
                                    :           NO. 24-4105
LIGHTBOX PARENT, L.P.,              :
et al.                              :
_____

ATLAS DATA PRIVACY                  :           CIVIL ACTION
CORPORATION, et al.                 :
                                    :
             v.                     :
                                    :           NO. 24-4106
SEARCH QUARRY, LLC, et al.          :
_____

ATLAS DATA PRIVACY                  :           CIVIL ACTION
CORPORATION, et al.                 :
                                    :
             v.                     :
                                    :           NO. 24-4107
ACXIOM, LLC, et al.                 :
_____

ATLAS DATA PRIVACY                  :           CIVIL ACTION
CORPORATION, et al.                 :
                                    :
             v.                     :
                                    :           NO. 24-4110
ENFORMION, LLC, et al.              :
_____

ATLAS DATA PRIVACY                  :           CIVIL ACTION
CORPORATION, et al.                 :
                                    :
             v.                     :
                                    :           NO. 24-4111
COSTAR GROUP, INC., et al.          :
_____
```

JA707

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :            NO. 24-4112
ORACLE INTERNATIONAL           :
CORPORATION, et al.            :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :            NO. 24-4113
RED VIOLET, INC., et al.       :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :            NO. 24-4114
RE/MAX, LLC, et al.            :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :            NO. 24-4141
DIGITAL SAFETY PRODUCTS,        :
LLC, et al.                    :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :            NO. 24-4143
CIVIL DATA RESEARCH            :
```
_____

```
ATLAS DATA PRIVACY            :           CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :           NO. 24-4160
SCALABLE COMMERCE, LLC,      :
et al.                       :
```

```
ATLAS DATA PRIVACY            :           CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :           NO. 24-4168
EPSILON DATA MANAGEMENT,     :
LLC, et al.                  :
```

```
ATLAS DATA PRIVACY            :           CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :           NO. 24-4171
PEOPLE DATA LABS, INC.,      :
et al.                       :
```

```
ATLAS DATA PRIVACY            :           CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :           NO. 24-4174
LABELS & LISTS, INC          :
```

```
ATLAS DATA PRIVACY            :           CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :           NO. 24-4175
CLARITAS, LLC, et al.        :
```

JA709

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4176
INNOVIS DATA SOLUTIONS INC.,    :
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4178
ACCURATE APPEND, INC.,          :
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4181
DATA AXLE, INC., et al.         :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4182
REMINE INC., et al.             :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4184
LUSHA SYSTEMS, INC, et al.      :
```
_____

JA710

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :            NO. 24-4217
TELTECH SYSTEMS, INC.,       :
et al.                       :
```
_____

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :            NO. 24-4227
PEOPLECONNECT, INC., et al.  :
```
_____

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :            NO. 24-4230
CORELOGIC, INC., et al.      :
```
_____

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :            NO. 24-4233
BLACK KNIGHT TECHNOLOGIES,   :
LLC, et al.                  :
```
_____

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                             :
            v.               :
                             :            NO. 24-4256
ZILLOW, INC., et al.         :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :              NO. 24-4261
EQUIMINE, INC., et al.         :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :              NO. 24-4269
THOMSON REUTERS CORPORATION,   :
et al.                         :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :              NO. 24-4271
CHOREOGRAPH LLC, et al.        :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :              NO. 24-4288
TRANSUNION, LLC., et al.       :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
        v.                     :
                               :              NO. 24-4292
MELISSA DATA CORP., et al.     :
_____
```

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4298 |
| EQUIFAX INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4299 |
| SPOKEO, INC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4324 |
| RESTORATION OF AMERICA, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4345 |
| i360, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4354 |
| TELNYX LLC, et al. | : | |

JA713

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4380
GOHUNT, LLC, et al.            :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4383
ACCUZIP, INC., et al.          :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,      :
et al.                         :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4389
JOY ROCKWELL ENTERPRISES,      :
INC., et al.                   :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4390
FORTNOFF FINANCIAL, LLC,       :
et al.                         :
_____
```

JA714

```
ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4392
MYHERITAGE, LTD., et al.      :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4434
E-MERGES.COM, INC.            :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4442
WILAND, INC., et al.          :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4447
ATDATA, LLC, et al.           :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4571
PRECISELY HOLDINGS, LLC,      :
et al.                        :
_____
```

-12-

JA715

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4609
NUWBER, INC., et al.           :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4664
ROCKETREACH LLC, et al.        :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4696
OUTSIDE INTERACTIVE, INC.      :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4770
VALASSIS DIGITAL CORP.,        :
et al.                         :
```

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4850
THE LIFETIME VALUE CO. LLC,    :
et al.                         :
```

-13-

JA716

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :            NO. 24-4949
BELLES CAMP COMMUNICATIONS,     :
INC., et al.                    :
```
---
```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :            NO. 24-5334
FIRST AMERICAN FINANCIAL        :
CORPORATION, et al.             :
```
---
```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :            NO. 24-5600
PROPERTYRADAR, INC., ET AL.     :
```
---
```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :            NO. 24-5656
THE ALESCO GROUP, L.L.C.        :
```
---
```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :            NO. 24-5658
SEARCHBUG, INC.                 :
```

JA717

```
ATLAS DATA PRIVACY              :        CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :        NO. 24-5775
AMERILIST, INC., et al.         :
```

<u>ORDER</u>

AND NOW, this 8th day of May 2024, after a status conference with counsel, it is hereby ORDERED that:

(1)  Defendants in the above actions that are not subject to a motion by Plaintiffs to remand shall file on or before June 10, 2024 any motions to dismiss on the ground that Daniel's Law, N.J. Stat. Ann. §§ 47:1A-1, et seq., and 56:8-166.1, is unconstitutional on its face, together with a consolidated brief.  The consolidated brief shall not exceed 50 pages.

(2)  Any such Defendant that seeks to file an individual brief in support of such motion shall do so on or before June 14, 2024.  It shall not be repetitive of the consolidated brief.  The individual brief shall not exceed 10 pages.

(3)  Plaintiffs, on or before July 15, 2024, shall file a consolidated brief in opposition to Defendants' motions to dismiss.  Such brief shall not exceed 55 pages.

-15-

JA718

(4)  Such Defendants, on or before July 30, 2024, shall file any consolidated reply brief and any individual reply briefs.  The consolidated reply brief shall not exceed 25 pages and any individual reply brief shall not exceed 5 pages.

(5)  Any Defendant that is not subject to a remand motion and that files a motion challenging the constitutionality of Daniel's Law on its face is not deemed to have waived any other ground for dismissal of the Complaint, including but not limited to a challenge to the constitutionality of Daniel's Law as applied, personal jurisdiction, venue, and arbitrability.

(6)  Any Defendant that is not subject to a remand motion and that does not file a motion to dismiss on the ground that Daniel's Law is unconstitutional on its face shall file any motion to dismiss on any other ground on or before June 10, 2024, together with any supporting brief.

(7)  Any Defendant that is not subject to a remand motion and that does not file a motion to dismiss on any ground shall file an Answer on or before June 10, 2024.

(8)  Any Defendant in the above actions that is subject to a remand motion will be permitted to participate in the briefing on the constitutional issue pursuant to the schedule set forth in Paragraphs (1) through (4) in this order.

-16-

JA719

(9)   The participation in the briefing on the constitutional issue by any Defendant that is subject to a remand motion shall not be deemed a waiver of any defenses it may have if this court ultimately determines that it has subject matter jurisdiction.

(10) These actions are stayed pending further order of the court, except as set forth in this order and except as to discovery and briefing on subject matter jurisdiction over the Defendants that are subject to remand motions.

BY THE COURT:


/s/ Harvey Bartle III
                                        J.

-17-

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | NO. 24-3993 |
| BLACKBAUD, INC., et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | NO. 24-3998 |
| WHITEPAGES, INC., et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | NO. 24-4000 |
| HIYA, INC., et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | NO. 24-4037 |
| WE INFORM, LLC, et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | NO. 24-4041 |
| INFOMATICS, LLC, et al. | : | |

---

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
             v.                 :
                                :              NO. 24-4045
THE PEOPLE SEARCHERS, LLC,      :
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
             v.                 :
                                :              NO. 24-4073
COMMERCIAL REAL ESTATE          :
EXCHANGE, INC., et al.          :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
             v.                 :
                                :              NO. 24-4075
DM GROUP, INC., et al.          :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
             v.                 :
                                :              NO. 24-4077
CARCO GROUP INC., et al.        :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
             v.                 :
                                :              NO. 24-4080
DELUXE CORPORATION, et al.      :
```
_____

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :          NO. 24-4095
TWILIO INC., et al.               :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :          NO. 24-4096
DELVEPOINT, LLC, et al.           :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :          NO. 24-4098
QUANTARIUM ALLIANCE, LLC,         :
et al.                            :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :          NO. 24-4103
YARDI SYSTEMS, INC., et al.       :
_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
              v.                  :
                                  :          NO. 24-4104
6SENSE INSIGHTS, INC.,            :
et al.                            :
_____
```

JA723

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4105
LIGHTBOX PARENT, L.P.,        :
et al.                        :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4106
SEARCH QUARRY, LLC, et al.    :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4107
ACXIOM, LLC, et al.           :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4110
ENFORMION, LLC, et al.        :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :          NO. 24-4111
COSTAR GROUP, INC., et al.    :
```
_____

JA724

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-4112
ORACLE INTERNATIONAL            :
CORPORATION, et al.             :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-4113
RED VIOLET, INC., et al.        :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-4114
RE/MAX, LLC, et al.             :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-4141
DIGITAL SAFETY PRODUCTS,        :
LLC, et al.                     :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-4143
CIVIL DATA RESEARCH             :
```
_____

JA725

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :          NO. 24-4160
SCALABLE COMMERCE, LLC,           :
et al.                            :
```
_____

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :          NO. 24-4168
EPSILON DATA MANAGEMENT,          :
LLC, et al.                       :
```
_____

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :          NO. 24-4171
PEOPLE DATA LABS, INC.,           :
et al.                            :
```
_____

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :          NO. 24-4174
LABELS & LISTS, INC               :
```
_____

```
ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :          NO. 24-4175
CLARITAS, LLC, et al.             :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                              :
              v.              :
                              :              NO. 24-4176
INNOVIS DATA SOLUTIONS INC.,  :
et al.                        :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                              :
              v.              :
                              :              NO. 24-4178
ACCURATE APPEND, INC.,        :
et al.                        :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                              :
              v.              :
                              :              NO. 24-4181
DATA AXLE, INC., et al.       :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                              :
              v.              :
                              :              NO. 24-4182
REMINE INC., et al.           :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                              :
              v.              :
                              :              NO. 24-4184
LUSHA SYSTEMS, INC, et al.    :
```
_____

JA727

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4217
TELTECH SYSTEMS, INC.,         :
et al.                         :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4227
PEOPLECONNECT, INC., et al.    :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4230
CORELOGIC, INC., et al.        :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4233
BLACK KNIGHT TECHNOLOGIES,     :
LLC, et al.                    :
```
_____

```
ATLAS DATA PRIVACY              :            CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :            NO. 24-4256
ZILLOW, INC., et al.           :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :          NO. 24-4261
EQUIMINE, INC., et al.          :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :          NO. 24-4269
THOMSON REUTERS CORPORATION,    :
et al.                          :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :          NO. 24-4271
CHOREOGRAPH LLC, et al.         :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :          NO. 24-4288
TRANSUNION, LLC., et al.        :
_____

ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :          NO. 24-4292
MELISSA DATA CORP., et al.      :
_____
```

-9-

```
ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.           :
                              :
        v.                    :
                              :            NO. 24-4298
EQUIFAX INC., et al.          :
_____

 ATLAS DATA PRIVACY           :            CIVIL ACTION
 CORPORATION, et al.          :
                              :
         V.                   :
                              :            NO. 24-4299
 SPOKEO, INC, et al.          :
_____

 ATLAS DATA PRIVACY           :            CIVIL ACTION
 CORPORATION, et al.          :
                              :
        v.                    :
                              :            NO. 24-4324
 RESTORATION OF AMERICA,      :
 et al.                       :
_____

 ATLAS DATA PRIVACY           :            CIVIL ACTION
 CORPORATION, et al.          :
                              :
        v.                    :
                              :            NO. 24-4345
 i360, LLC, et al.            :
_____

 ATLAS DATA PRIVACY           :            CIVIL ACTION
 CORPORATION, et al.          :
                              :
        v.                    :
                              :            NO. 24-4354
 TELNYX LLC, et al.           :
_____
```

JA730

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
              v.               :
                               :              NO. 24-4380
GOHUNT, LLC, et al.            :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
              v.               :
                               :              NO. 24-4383
ACCUZIP, INC., et al.          :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
              v.               :
                               :              NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,      :
et al.                         :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
              v.               :
                               :              NO. 24-4389
JOY ROCKWELL ENTERPRISES,      :
INC., et al.                   :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
              v.               :
                               :              NO. 24-4390
FORTNOFF FINANCIAL, LLC,       :
et al.                         :
_____
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4392
MYHERITAGE, LTD., et al.        :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4434
E-MERGES.COM, INC.              :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4442
WILAND, INC., et al.            :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4447
ATDATA, LLC, et al.             :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4571
PRECISELY HOLDINGS, LLC,        :
et al.                          :
_____
```

-12-

JA732

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :           NO. 24-4609
NUWBER, INC., et al.            :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :           NO. 24-4664
ROCKETREACH LLC, et al.         :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :           NO. 24-4696
OUTSIDE INTERACTIVE, INC.       :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :           NO. 24-4770
VALASSIS DIGITAL CORP.,         :
et al.                          :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
         v.                     :
                                :           NO. 24-4850
THE LIFETIME VALUE CO. LLC,     :
et al.                          :
```

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-4949
BELLES CAMP COMMUNICATIONS,     :
INC., et al.                    :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-5334
FIRST AMERICAN FINANCIAL        :
CORPORATION, et al.             :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-5600
PROPERTYRADAR, INC., ET AL.     :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-5656
THE ALESCO GROUP, L.L.C.        :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :           NO. 24-5658
SEARCHBUG, INC.                 :
```
_____

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :        NO. 24-5775
AMERILIST, INC., et al.           :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :        NO. 24-6160
LEXISNEXIS RISK DATA              :
MANAGEMENT, LLC, et al.           :
```

```
ATLAS DATA PRIVACY                :        CIVIL ACTION
CORPORATION, et al.               :
                                  :
            v.                    :
                                  :        NO. 24-7324
US DATA CORPORATION, et al.       :
```

ORDER

AND NOW, this 10th day of July 2024, it is hereby
ORDERED that:

(1)  The Court's orders of May 8, 2024 and June 3,
2024 are VACATED.

(2)  Plaintiffs and the Attorney General of New
Jersey, on or before August 5, 2024, shall file their briefs in
opposition to Defendants' motions to dismiss on the ground that
Daniel's Law, N.J. Stat. Ann. §§ 47:1A-1, et seq., and 56:8-
166.1, is unconstitutional on its face.

-15-

JA735

(3)   Neither the consolidated brief of Plaintiffs nor the brief of the Attorney General of New Jersey shall exceed 55 pages.

(4)   Defendants, on or before August 30, 2024, shall file any consolidated reply brief and any individual reply briefs.  The consolidated reply brief shall not exceed 40 pages and any individual reply brief shall not exceed 5 pages.

(5)   Any Defendant that is not subject to a remand motion and that files a motion challenging the constitutionality of Daniel's Law on its face is not deemed to have waived any other ground for dismissal of the Complaint, including but not limited to a challenge to the constitutionality of Daniel's Law as applied, personal jurisdiction, venue, and arbitrability.

(6)   Any Defendant in the above actions that is subject to a remand motion will be permitted to participate in the briefing on the constitutional issue pursuant to the schedule set forth in this order.

(7)   The participation in the briefing on the constitutional issue by any Defendant that is subject to a remand motion shall not be deemed a waiver of any defenses it may have if this court ultimately determines that it has subject matter jurisdiction.

-16-

(8)  These actions are stayed pending further order of the court, except as set forth in this order and except as to discovery and briefing on subject matter jurisdiction over the Defendants that are subject to remand motions.

(9)  Any entity seeking to file an amicus brief regarding the facial challenge to the constitutionality of Daniel's Law shall file on or before August 1, 2024 a petition to do so together with said amicus brief.  The amicus brief shall not exceed 30 pages.

BY THE COURT:

/s/ Harvey Bartle III
                                              J.

-17-

```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY


ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-3993
BLACKBAUD, INC., et al.       :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-3998
WHITEPAGES, INC., et al.      :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4000
HIYA, INC., et al.            :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4037
WE INFORM, LLC, et al.        :
_____

ATLAS DATA PRIVACY            :         CIVIL ACTION
CORPORATION, et al.           :
                              :
          v.                  :
                              :         NO. 24-4041
INFOMATICS, LLC, et al.       :
_____
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4045
THE PEOPLE SEARCHERS, LLC,      :
et al.                          :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4073
COMMERCIAL REAL ESTATE          :
EXCHANGE, INC., et al.          :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4075
DM GROUP, INC., et al.          :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4077
CARCO GROUP INC., et al.        :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4080
DELUXE CORPORATION, et al.      :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
           v.                  :
                               :              NO. 24-4095
TWILIO INC., et al.            :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
           v.                  :
                               :              NO. 24-4096
DELVEPOINT, LLC, et al.        :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
           v.                  :
                               :              NO. 24-4098
QUANTARIUM ALLIANCE, LLC,      :
et al.                         :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
           v.                  :
                               :              NO. 24-4103
YARDI SYSTEMS, INC., et al.    :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
           v.                  :
                               :              NO. 24-4104
6SENSE INSIGHTS, INC.,         :
et al.                         :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-4105
LIGHTBOX PARENT, L.P.,        :
et al.                        :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-4106
SEARCH QUARRY, LLC, et al.    :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-4107
ACXIOM, LLC, et al.           :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-4110
ENFORMION, LLC, et al.        :
_____

ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-4111
COSTAR GROUP, INC., et al.    :
_____
```

JA741

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4112
ORACLE INTERNATIONAL           :
CORPORATION, et al.            :
```
---
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4113
RED VIOLET, INC., et al.       :
```
---
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4114
RE/MAX, LLC, et al.            :
```
---
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4141
DIGITAL SAFETY PRODUCTS,       :
LLC, et al.                    :
```
---
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4143
CIVIL DATA RESEARCH            :
```
---

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4160
SCALABLE COMMERCE, LLC,         :
et al.                          :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4168
EPSILON DATA MANAGEMENT,        :
LLC, et al.                     :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4171
PEOPLE DATA LABS, INC.,         :
et al.                          :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4174
LABELS & LISTS, INC             :
```
_____
```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :              NO. 24-4175
CLARITAS, LLC, et al.           :
```
_____

JA743

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :              NO. 24-4176
INNOVIS DATA SOLUTIONS INC.,   :
et al.                         :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :              NO. 24-4178
ACCURATE APPEND, INC.,         :
et al.                         :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :              NO. 24-4181
DATA AXLE, INC., et al.        :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :              NO. 24-4182
REMINE INC., et al.            :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :              NO. 24-4184
LUSHA SYSTEMS, INC, et al.     :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :          NO. 24-4217
TELTECH SYSTEMS, INC.,         :
et al.                         :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :          NO. 24-4227
PEOPLECONNECT, INC., et al.    :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :          NO. 24-4230
CORELOGIC, INC., et al.        :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :          NO. 24-4233
BLACK KNIGHT TECHNOLOGIES,     :
LLC, et al.                    :
```
_____

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :          NO. 24-4256
ZILLOW, INC., et al.           :
```
_____

```
ATLAS DATA PRIVACY              :        CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :        NO. 24-4261
EQUIMINE, INC., et al.          :
```
_____

```
ATLAS DATA PRIVACY              :        CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :        NO. 24-4269
THOMSON REUTERS CORPORATION,    :
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :        CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :        NO. 24-4271
CHOREOGRAPH LLC, et al.         :
```
_____

```
ATLAS DATA PRIVACY              :        CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :        NO. 24-4288
TRANSUNION, LLC., et al.        :
```
_____

```
ATLAS DATA PRIVACY              :        CIVIL ACTION
CORPORATION, et al.             :
                                :
            v.                  :
                                :        NO. 24-4292
MELISSA DATA CORP., et al.      :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
           v.                   :
                                :              NO. 24-4298
EQUIFAX INC., et al.            :
_____

 ATLAS DATA PRIVACY             :              CIVIL ACTION
 CORPORATION, et al.            :
                                :
            V.                  :
                                :              NO. 24-4299
 SPOKEO, INC, et al.            :
_____

 ATLAS DATA PRIVACY             :              CIVIL ACTION
 CORPORATION, et al.            :
                                :
            v.                  :
                                :              NO. 24-4324
 RESTORATION OF AMERICA,        :
 et al.                         :
_____

 ATLAS DATA PRIVACY             :              CIVIL ACTION
 CORPORATION, et al.            :
                                :
            v.                  :
                                :              NO. 24-4345
 i360, LLC, et al.              :
_____

 ATLAS DATA PRIVACY             :              CIVIL ACTION
 CORPORATION, et al.            :
                                :
            v.                  :
                                :              NO. 24-4354
 TELNYX LLC, et al.             :
_____
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4380
GOHUNT, LLC, et al.            :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4383
ACCUZIP, INC., et al.          :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,      :
et al.                         :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4389
JOY ROCKWELL ENTERPRISES,      :
INC., et al.                   :
_____

ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.            :
                               :
          v.                   :
                               :              NO. 24-4390
FORTNOFF FINANCIAL, LLC,       :
et al.                         :
_____
```

```
ATLAS DATA PRIVACY               :           CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :           NO. 24-4392
MYHERITAGE, LTD., et al.         :
_____

ATLAS DATA PRIVACY               :           CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :           NO. 24-4434
E-MERGES.COM, INC.               :
_____

ATLAS DATA PRIVACY               :           CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :           NO. 24-4442
WILAND, INC., et al.             :
_____

ATLAS DATA PRIVACY               :           CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :           NO. 24-4447
ATDATA, LLC, et al.              :
_____

ATLAS DATA PRIVACY               :           CIVIL ACTION
CORPORATION, et al.              :
                                 :
          v.                     :
                                 :           NO. 24-4571
PRECISELY HOLDINGS, LLC,         :
et al.                           :
_____
```

-12-

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :           NO. 24-4609
NUWBER, INC., et al.           :
```
---
```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :           NO. 24-4664
ROCKETREACH LLC, et al.        :
```
---
```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :           NO. 24-4696
OUTSIDE INTERACTIVE, INC.      :
```
---
```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :           NO. 24-4770
VALASSIS DIGITAL CORP.,        :
et al.                         :
```
---
```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :           NO. 24-4850
THE LIFETIME VALUE CO. LLC,    :
et al.                         :
```

-13-

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-4949
BELLES CAMP COMMUNICATIONS,   :
INC., et al.                  :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-5334
FIRST AMERICAN FINANCIAL      :
CORPORATION, et al.           :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-5600
PROPERTYRADAR, INC., ET AL.   :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-5656
THE ALESCO GROUP, L.L.C.      :
```
_____

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
            v.                :
                              :          NO. 24-5658
SEARCHBUG, INC.               :
```
_____

```
ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.           :
                              :
           v.                 :
                              :        NO. 24-5775
AMERILIST, INC., et al.       :
```

```
ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.           :
                              :
           v.                 :
                              :        NO. 24-6160
LEXISNEXIS RISK DATA          :
MANAGEMENT, LLC, et al.       :
```

```
ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.           :
                              :
           v.                 :
                              :        NO. 24-7324
US DATA CORPORATION, et al.   :
```

```
ATLAS DATA PRIVACY            :        CIVIL ACTION
CORPORATION, et al.           :
                              :
           v.                 :
                              :        NO. 24-8075
SMARTY, LLC, et al.           :
```

<u>ORDER</u>

AND NOW, this 15th day of August, 2024, it is hereby ORDERED that:

(1)  The Court's order of July 10, 2024 is VACATED.

(2)  Defendants in the above actions, on or before September 13, 2024, shall file any consolidated reply brief and

-15-

JA752

any individual reply briefs in support of their motions to dismiss on the ground that Daniel's Law, N.J. Stat. Ann. §§ 47:1A-1, et seq., and 56:8-166.1, is unconstitutional on its face.  The consolidated reply brief shall not exceed 40 pages and any individual reply brief shall not exceed 5 pages.  NO FURTHER CONTINUANCES WILL BE GRANTED.

(3)  Any Defendant that is not subject to a remand motion and that files a motion challenging the constitutionality of Daniel's Law on its face is not deemed to have waived any other ground for dismissal of the Complaint, including but not limited to a challenge to the constitutionality of Daniel's Law as applied, personal jurisdiction, venue, and arbitrability.

(4)  Any Defendant in the above actions that is subject to a remand motion will be permitted to participate in the briefing on the constitutional issue pursuant to the schedule set forth in this order.

(5)  The participation in the briefing on the constitutional issue by any Defendant that is subject to a remand motion shall not be deemed a waiver of any defenses it may have if this court ultimately determines that it has subject matter jurisdiction.

-16-

JA753

(6)  These actions are stayed pending further order of the court, except as set forth in this order and except as to discovery and briefing on subject matter jurisdiction over the Defendants that are subject to remand motions.

BY THE COURT:


/s/ Harvey Bartle III
                                                   J.

-17-

# DECLARATION OF SERRIN TURNER

# (FILED UNDER SEAL)

# EXHIBIT 1

Case: 25-1570     Document: 29     Page: 292     Date Filed: 04/14/2025

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 1 of 24   Trans ID: LCV2024343268
Case 1:24-cv-03993-HBB   Document 27-2   Filed 08/19/24   Page 2 of 25 PageID: 864

**GENOVA BURNS LLC**
Rajiv D. Parikh (032462005)
Kathleen Barnett Einhorn (040161992)
494 Broad Street
Newark, New Jersey 07102
Tel.: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

**MORGAN & MORGAN**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@forthepeople.com

*Attorneys for Plaintiffs Atlas Data Privacy Corporation, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev and William Sullivan*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>Plaintiffs,<br>v.<br><br>BLACKBAUD, INC., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MORRIS COUNTY DOCKET NO.: MRS-L-_____-24<br><br><u>CIVIL ACTION</u><br><br>**COMPLAINT** |

Plaintiffs Atlas Data Privacy Corporation ("Atlas") as the assignee of individuals who are

Covered Persons under Daniel's Law along with Jane Doe-1 (a law enforcement officer), Jane

Doe-2 (a law enforcement officer), Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick

Case: 25-1570    Document: 29    Page: 293    Date Filed: 04/14/2025

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 2 of 24   Trans ID: LCV2024343268
Case 1:24-cv-03993-HBB Document 27-2   Filed 08/19/24   Page 3 of 24 PageID: 755

Colligan, Peter Andreyev, and William Sullivan (collectively, "Plaintiffs"), by and through their
undersigned counsel, hereby submit this Complaint against Defendants and state as follows:

**INTRODUCTION**

1.      In these tumultuous times, it is critical that the most sensitive personal information
of those who serve the public be protected from unwarranted disclosure.  As set forth below,
Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement
officers, and prosecutors – and their families – with the right to prevent the disclosure of their
home addresses and unpublished home telephone numbers, and to enforce those rights against
uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights, against companies brokering
data and choosing profit and personal gain over a critical public interest and the unequivocal
mandate of the law.  Companies in the business of disclosing this protected information have
avoided accountability for far too long, proffering such information, including home addresses and
unpublished home telephone numbers, without sufficient regard for the risks and consequences
imposed upon individuals who serve critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who
serve – and their families – must be assured.  Here, not only do the data brokers wantonly and
repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of
those who serve.  Our judges, law enforcement officers and prosecutors should receive the full
measure of protection afforded to them under the same laws they enforce for the safety of all
citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges,
law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory
provisions, Atlas brings this action as an assignee for certain individuals, including many family

members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents.  By the time his mother, a Judge, came to the door to check on what happened, the killer was gone.  But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.      During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman.  Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

7.      Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

**New Jersey Passes Daniel's Law in 2020**

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* <u>N.J.S.A.</u> 47:1A-1, <u>et</u> <u>seq.</u> and <u>N.J.S.A</u> 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person.  Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers.  Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law.  The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety … [a] judicial system cannot and should not live in fear."[2]

11.     The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers.  It allowed federal judges to redact their personal information displayed on federal government internet sites.

12.     The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

### Violence Against Police Officers and Judges Has Not Stopped

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6]  The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

---

[2] https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3] https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4] https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5] Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com).
[6] Judge Andrew Wilkinson: Suspect still on the run after killing a judge at his home in a 'targeted attack' following a child custody ruling, sheriff says | CNN.
[7] Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say | CNN.

5

## THE PARTIES

### The Individual Plaintiffs

15.    Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside.  Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address.  Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children.  Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate.  The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder.  This death threat was investigated and considered credible enough to result in a successful criminal prosecution.  Part of Officer Doe-2's current duties include working in her

Case: 25-1570    Document: 29    Page: 298    Date Filed: 04/14/2025

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 7 of 24   Trans ID: LCV2024343268
Case 1:24-cv-03093-HBB   Document 27-2   Filed 08/19/24   Page 8 of 24 PageID: 820

correctional facility's law library, where inmates have access to the Internet including online data broker websites and services.  Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff.  The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

17.    Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000.  After a few months on the job, he was assigned to street crimes, where he excelled at field work.  In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey.  He worked with the task force for the next two years.  During that time period, he received multiple credible death threats from MS-13 members.  Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work.  In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead.  They intended to burn down her building with her inside, but set fire to an adjacent building by mistake.  Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps.  Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

18.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department.  They live together in New Jersey with their two young children.  In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

19.     The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

20.     One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown

Case: 25-1570     Document: 29     Page: 300     Date Filed: 04/14/2025

MRS-L-000243-24    02/07/2024 11:26:12 PM    Pg 9 of 24    Trans ID: LCV2024343268
Case 1:24-cv-01093-HBB  Document 21-2    Filed 08/19/24   Page 10 of 24 PageID: 862

messenger went on to state that they knew where the Maloneys lived and sent the full name and
home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather
sensitive personal information.  Sergeant Maloney refused to comply with any demands.  He then
received a video of three individuals in ski masks armed with handguns and assault rifles repeating
the extortion demand.  In part of the video, a masked individual points a rifle at the camera and
tells Sergeant Maloney that his family is "going to get [their] heads cut off."

21.     Several weeks later, one of the Maloneys' neighbors observed two suspicious
looking individuals in ski masks parked one block away from the home and alerted
police.  Responding officers arrested two men - who were armed - for unlawful possession of a
firearm.  Video surveillance captured by nearby houses shows the two men circling the Maloneys'
house immediately prior to their arrest.  Officer Maloney and her two young children were at home
at the time.

22.     Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin
Township police department in Somerset, New Jersey.  Since 2014, Detective Colligan has served
as the President of the New Jersey State Policemen's Benevolent Association, representing more
than 33,000 active law enforcement officers throughout the state.  During the course of his law
enforcement career, he has received numerous threats of violence targeted at him and his family
as a result of his public service.  The seriousness of certain threats necessitated the installation of
a surveillance camera system and alarm system, and training for his spouse and children about
how to respond in the event of an attack on their home.

23.     Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant,
New Jersey police department.  Officer Andreyev currently services as the Executive Vice
President of the New Jersey State Policemen's Benevolent Association, representing more than

33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

24.    Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

10

26.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,251 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

27.     The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

28.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites, mailing lists or through other methods of disclosure.

29.     Defendants have not responded to these notices and, upon information and belief, have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

30.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

31.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New

11

JA767

Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

32.     Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a Covered Person under Daniel's Law.   Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:



33.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a

Case: 25-1570    Document: 29    Page: 304    Date Filed: 04/14/2025

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 13 of 24   Trans ID: LCV2024343268
Case 1:24-cv-01093-HBB   Document 21-2   Filed 06/10/24   Page 14 of 25 PageID: 886

unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

✓  Upon completing this signup process, a new email account will be created for your personal use. It will be:
**john.doe23@atlasmail.com**

✓  You can access this email account from within the Atlas web application.

✓  This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back                                                          Next

34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to.  On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices.  If they choose not to send takedown notices to the recommended list, they can select

13

JA769

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 14 of 24   Trans ID: LCV2024343268
Case 1.24-cv-01093-HB   Document 27-2   Filed 06/19/24   Page 15 of 24 PageID: 807

individual recipients at a later page (as shown in the example copied below).  Here, each of the

Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



35.     Any reply or response back from a data broker to the law enforcement officer or

other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully

featured email service provider, and its users can reply, forward, or use their AtlasMail account as

they would any other email account:

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 15 of 24   Trans ID: LCV2024343268
Case 1:24-cv-01093-HBB   Document 27-2   Filed 06/10/24   Page 16 of 24 PageID: 868

## AtlasMail

✏ **Compose**

🔍 Search in Mail

| ≡ ALL MAIL | 🖵 INBOX | ➤ SENT | 📣 ASSIGNMENT CONFIRMATIONS |

| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:40 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 11:39 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | 8:29 PM |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |
| John Doe | Data Subject Request - Redaction/nondisclosure Request | Jan 3 |

‹  1  2  3  4  5  …  16  ›

JA771



36.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.  This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight.  Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**Defendants**

37.     Defendant Blackbaud, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

16

38.     Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

39.     Defendants offer and engage in the disclosure of data and information through one or more websites, applications, or mailing lists, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include:

blackbaud.com

40.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

41.     Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

17

43.     Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

### FACTS COMMON TO ALL COUNTS

44.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

45.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

46.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

47.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

48.      Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

49.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

18

JA774

50.     As of July 20, 2023, Daniel's Law as codified in <u>N.J.S.A.</u> 56:8-166.1 provided:[8]

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

> c. The court shall award:

>> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

>> (2) punitive damages upon proof of willful or reckless disregard of the law;

>> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and

>> (4) any other preliminary and equitable relief as the court determines to be appropriate.

> d.  For the purposes of this section:

>> …"Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

51.     Starting on or about December 30, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

---

[8] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

52.    For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

---

### Data Subject Request – Redaction/nondisclosure Request

**To**        privacy@blackbaud.com
**From**     Peter Andreyev <⬛⬛⬛⬛⬛@atlasmail.com>
**Date**     Mon, Jan 1, 2024 11:44 PM

Blackbaud
January 1, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ⬛⬛⬛⬛⬛⬛⬛⬛

Sincerely,
Peter Andreyev

---

53.    Defendants failed to respond to these notices and, upon information and belief, cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.

54.    All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

55.    The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

Case: 25-1570    Document: 29    Page: 312    Date Filed: 04/14/2025

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 21 of 24   Trans ID: LCV2024343268
Case 1:24-cv-01093-HBB   Document 27-2   Filed 08/19/24   Page 22 of 24 PageID: 464

## COUNT ONE

### (Daniel's Law)

56.     The allegations of the Complaint set forth above are included herein as if set forth at length.

57.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

58.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

59.     As of the date of this filing, upon information and belief, Defendants still refuse to comply with Daniel's Law.  Upon information and belief, the protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

60.     Upon information and belief, Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

61.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

WHEREFORE, Plaintiffs request that Judgment be entered against Defendants as follows:

A. Ordering that Defendants immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and

JA777

MRS-L-000243-24   02/07/2024 11:26:12 PM   Pg 22 of 24   Trans ID: LCV2024343268
Case 1:24-cv-01093-HBB   Document 27-2   Filed 06/10/24   Page 23 of 24 PageID: 875

unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B.  Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C.  Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D.  Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.  Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.  Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.  Awarding such other and further relief against Defendants as the Court deems equitable and just.

<div style="margin-left:40%">

Respectfully Submitted,

**GENOVA BURNS LLC**

</div>

Dated: February 7, 2024            By: */s/ Rajiv D. Parikh*_____

<div style="margin-left:40%">

Rajiv D. Parikh
Kathleen Barnett Einhorn
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777

*Attorneys for Plaintiffs*

</div>

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com
rmcgee@ForThePeople.com

(*pro hac vice motions to be filed*)


## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4, Rajiv

D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.


                                    **GENOVA BURNS LLC**

Dated: February 7, 2024            By: */s/ Rajiv D. Parikh*

                                    Rajiv D. Parikh, Esq.

# EXHIBIT 10

Case 1:24-cv-04105-HB   Document 27-11   Filed 06/10/24   Page 2 of 12 PageID: 886



## ANNUAL REPORT
## OF
## GOVERNMENTAL AFFAIRS AGENT

### FORM L1-A
### Reporting For Calendar Year 2023

ELEC Received

Feb 14 2024
03:36 PM

FOR STATE USE ONLY

**NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION**
P.O. Box 185, Trenton, NJ 08625-0185
Phone: (609) 292-8700
Website: www.elec.nj.gov

Amendment ☐

Name of Governmental Affairs Agent or Governmental Affairs Agent Firm:

Genova Burns LLC

Business Address: 494 Broad Street

City Newark      State NJ      Zip Code 07102

*(Area Code) Telephone Number 973-533-0777

**1.** Provide the following information regarding the Governmental Affairs Agent(s) on whose behalf this report is filed.

1.  Name  Angelo J. Genova

Badge Number 1557-1      Occupation or Business Attorney

Business Address 494 Broad Street

City Newark      State NJ      Zip Code 07102

*(Area Code) Telephone Number 973-533-0777

2.  Name  Nicholas R. Amato

Badge Number 1557-5      Occupation or Business Attorney

Business Address 494 Broad Street

City Newark      State NJ      Zip Code 07102

*(Area Code) Telephone Number 973-533-0777

3.  Name  Rajiv D. Parikh

Badge Number 1557-7      Occupation or Business Attorney

Business Address 494 Broad Street

City Newark      State NJ      Zip Code 07102

*(Area Code) Telephone Number 973-533-0777

4.  Name  Avi D. Kelin

Badge Number 1557-8      Occupation or Business Attorney

Business Address 494 Broad Street

City Newark      State NJ      Zip Code 07102

*(Area Code) Telephone Number 973-533-0777

JA781

5.  Name  William F. Megna

Badge Number  1557-9                    Occupation or Business  Attorney

Business Address  494 Broad Street

City  Newark                                              State  NJ      Zip Code  07102

*(Area Code) Telephone Number  973-533-0777

*Leave this field blank if your telephone number is unlisted. Pursuant to N.J.S.A. 47:1A-1.1, an unlisted telephone number is not a public record and must not be provided on this form.

**2.** Provide the following information concerning all Represented Entities.

NOTE: Represented Entities who designate this report to include all of their activity must file Form L-2.

**RECEIPT AMOUNT**

**PURPOSE:** To report all fees, retainers, allowances, reimbursement of expenses, or other compensation received from Represented Entities for the purpose of influencing legislation, regulations, governmental processes, or communicating with the general public.

**NOTE:** Report only the pro rata share of each receipt which is related to influencing legislation, regulations, governmental processes, or communicating with the general public.

---

1. Name of Represented Entity   **Scientific Games Corp**

Business Address   **6650 S. El Camino Road**

City **Las Vegas**   State **NV**   Zip Code **89118**

Type of Business **Gaming Services**

RECEIPT AMOUNT
**0.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

2. Name of Represented Entity   **New Meadowlands Racetrack LLC**

Business Address   **1 Racetrack Drive**

City **East Rutherford**   State **NJ**   Zip Code **07073**

Type of Business **Racetrack Operator**

RECEIPT AMOUNT
**0.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

3. Name of Represented Entity   **14-16 Burma Road Industrial LLC dba SAK Structures LLC**

Business Address   **14 Burma Road**

City **Jersey City**   State **NJ**   Zip Code **07305**

Type of Business **Real Estate**

RECEIPT AMOUNT
**0.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

4. Name of Represented Entity   **BioReference Laboratories, Inc.**

Business Address   **481 Edward H. Ross Drive**

City **Elmwood Park**   State **NJ**   Zip Code **07407**

Type of Business **Laboratory Services**

RECEIPT AMOUNT
**22,490.00**

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

---

Case 1:24-cv-04105-HB   Document 27-11   Filed 06/10/24   Page 5 of 12 PageID: 889

5. Name of Represented Entity   Atlantic Amateur Hockey Association

Business Address   PO Box 291

City   Ho Ho Kus   State   NJ   Zip Code   07423

**RECEIPT AMOUNT**

Type of Business   Amateur Hockey Association

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

6. Name of Represented Entity   Association Master Trust

Business Address   636 Morris Turnpike, Ste. 2A

City   Short Hills   State   NJ   Zip Code   07078

**RECEIPT AMOUNT**

Type of Business   self-funded multiple employer welfare arrangement

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

7. Name of Represented Entity   New Jersey Restaurant and Hospitality Association

Business Address   126 West State Street

City   Trenton   State   NJ   Zip Code   08608

**RECEIPT AMOUNT**

Type of Business   Trade Association for Restaurant and Hospitality Industry

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

8. Name of Represented Entity   SB Hoboken Propco, LLC

Business Address   175 Belgrove Drive

City   Kearny   State   NJ   Zip Code   07032

**RECEIPT AMOUNT**

Type of Business   Real Estate

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

9. Name of Represented Entity   EDP Soccer

Business Address   8 Cornwall Court

City   East Brunswick   State   NJ   Zip Code   08816

**RECEIPT AMOUNT**

Type of Business   Youth Soccer

0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

10. Name of Represented Entity   State Fair Group

Business Address   331 Newman Springs Road

City  Red Bank          State  NJ    Zip Code  07701

Type of Business  Operation of Amusement Park

**RECEIPT AMOUNT**
850.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

11. Name of Represented Entity   Parkway Autonomous Inc.

Business Address   146 Wolcott Street

City  Brooklyn          State  NY    Zip Code  11231

Type of Business  Transportation

**RECEIPT AMOUNT**
0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☑ Check if the Represented Entity is designating this report to indicate all of their activity.

12. Name of Represented Entity   New Jersey Democratic State Committee

Business Address   142 W State Street

City  Trenton          State  NJ    Zip Code  08608

Type of Business  Political Party

**RECEIPT AMOUNT**
6,765.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

13. Name of Represented Entity   Atlas Privacy

Business Address   2810 N Church Street, Unit 72500

City  Wilmington          State  DE    Zip Code  19802

Type of Business  Data Privacy

**RECEIPT AMOUNT**
0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

14. Name of Represented Entity   CEP Renewables

Business Address   331 Newman Springs Road

City  Red Bank          State  NJ    Zip Code  07701

Type of Business  Solar Developer

**RECEIPT AMOUNT**
0.00

☐ Check if communication with the general public ("Grassroots Lobbying") was the **only** lobbying activity for this entity.
☐ Check if the Represented Entity is designating this report to indicate all of their activity.

Case 1:24-cv-04105-HB   Document 27-11   Filed 06/10/24   Page 7 of 12 PageID: 891

## SCHEDULE A

1. Provide the following information for any Governmental Affairs Agent named in this Annual Report who served as a member of:

- any independent State authority;

- any county improvement authority;

- any municipal utilities authority;

- any inter-State or bi-State authority as a member from New Jersey; or,

- any board or commission established by statute or resolution, or by executive order of the Governor, or by the Legislature, or by any Agency, Department or other instrumentality of the State.

(If this question does not apply, move on to question 2.)

Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


Name of Governmental Affairs Agent _____

Name of Authority, Board, or Commission _____

Date When Term of Service Expires _____


2. Did all Governmental Affairs Agent(s) named in this Annual Report file all Notices of Representation and Quarterly Reports required during the calendar year covered by this Annual Report?

☑ Yes  If "yes," continue on to Schedule B.          ☐ No  If "no," please file the necessary reports immediately.

## SCHEDULE B - SALARY & COMPENSATION

**PURPOSE:** To report the salary and compensation paid to the Governmental Affairs Agents on whose behalf this report is filed. Include the reimbursement of an Agent's expenses in amounts reported.

**NOTE:** Only the pro rata share of each Governmental Affairs Agent's salary and compensation need to be included if the Agent spends only a portion of his/her time on lobbying activity.

| NAME OF GOVERNMENTAL AFFAIRS AGENT | AMOUNT |
|---|---|
| Angelo J. Genova | $ 12,095.00 |
| Nicholas R. Amato | $ 0.00 |
| Rajiv D. Parikh | $ 6,765.00 |
| Avi D. Kelin | $ 11,245.00 |
| William F. Megna | $ 0.00 |
| **SCHEDULE B TOTAL $** | 30,105.00 |

## SCHEDULE C - SUPPORT PERSONNEL

**PURPOSE:** To report the costs of support personnel who, over the course of the reporting year, individually spend 450 or more hours supporting the activities of the Governmental Affairs Agent(s).

After determining to which person(s) this applies, report the pro rata share of those costs which are attributable to supporting the activities of the Governmental Affairs Agent(s) in influencing legislation, regulations, governmental processes, or communicating with the general public.

**SCHEDULE C TOTAL $**      0.00

## NO SCHEDULE D FOR GOVERNMENTAL AFFAIRS AGENTS

Case 1:24-cv-04105-HB   Document 27-11   Filed 06/10/24   Page 9 of 12 PageID: 893

## SCHEDULE E - COMMUNICATION EXPENSES

**PURPOSE:** To report the costs of the preparation and distribution of materials related to influencing legislation, regulations, governmental processes, and conducting communications with the general public.

| EXPENSE | AMOUNT |
|---|---|
| Printed Materials | $           0.00 |
| Postage | 0.00 |
| Film, Slides, Video, Audio | 0.00 |
| TV - Network | 0.00 |
| TV - Cable | 0.00 |
| Radio | 0.00 |
| Other Broadcast Medium | 0.00 |
| Internet | 0.00 |
| Telephone, Facsimile | 0.00 |
| Pro Rata Overhead Costs of Specific Events Over $100 (*please identify name and date of event*) | |
| | |
| | |
| | |
| Other (*please describe*): | |
| | |
| | |
| | |
| **SCHEDULE E TOTAL $** | 0.00 |

## SCHEDULE F - TRAVEL/LODGING

**PURPOSE:** To report the travel and lodging costs of the Governmental Affairs Agents on whose behalf this report is filed related to influencing legislation, regulations, governmental processes, or communicating with the general public.

| NAME OF GOVERNMENTAL AFFAIRS AGENT | AMOUNT |
|---|---|
| | $           0.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **SCHEDULE F TOTAL $** | 0.00 |

JA788

Case 1:24-cv-04105-HB   Document 27-11   Filed 06/10/24   Page 10 of 12 PageID: 894

| SCHEDULE G-1 | ITEMIZATION OF BENEFITS WHICH EXCEEDED $25 PER DAY OR $200 PER CALENDAR YEAR TO STATE OFFICIALS AND THEIR IMMEDIATE FAMILY MEMBERS |
|---|---|

**PURPOSE:** To report detailed information concerning benefits passed to State officials covered by the Act, as well as the immediate family members of these officials. If the value of a benefit exceeded $25 per day or $200 per calendar year, report below.

*(Select one description item for each entry from the drop down list. When selecting "O - Other", enter a description in the space provided.)*

Name of Benefit Recipient _____

Date _____  Description _____  _____  Amount $ _____ 0.00

Name and Address of Payee/Vendor
Name _____
Address _____
City _____  State _____  Zip Code _____
If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____  Amount $ _____
Description _____  _____

Name of Benefit Recipient _____

Date _____  Description _____  _____  Amount $ _____

Name and Address of Payee/Vendor
Name _____
Address _____
City _____  State _____  Zip Code _____
If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____  Amount $ _____
Description _____  _____

Name of Benefit Recipient _____

Date _____  Description _____  _____  Amount $ _____

Name and Address of Payee/Vendor
Name _____
Address _____
City _____  State _____  Zip Code _____
If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____  Amount $ _____
Description _____  _____

Name of Benefit Recipient _____

Date _____  Description _____  _____  Amount $ _____

Name and Address of Payee/Vendor
Name _____
Address _____
City _____  State _____  Zip Code _____
If benefit was reimbursed, please report the date, the description, and the amount of the reimbursement.
Date _____  Amount $ _____
Description _____  _____

Case 1:24-cv-04105-HB   Document 27-11   Filed 06/10/24   Page 11 of 12 PageID: 895

## SUMMARY OF BENEFIT PASSING

**PURPOSE:** To report the total amount of providing benefits to State officials covered by the Act and their immediate family members.

|  | **SCHEDULE G-1** | **SCHEDULE G-2*** | **AMOUNT** |
|---|---|---|---|
| Entertainment | $ _____ | + $ 0.00 | = $ 0.00 |
| Food and Beverage | _____ | + 0.00 | = 0.00 |
| Travel | _____ | + 0.00 | = 0.00 |
| Lodging | _____ | + 0.00 | = 0.00 |
| Honoraria | _____ | + 0.00 | = 0.00 |
| Loans | _____ | + 0.00 | = 0.00 |
| Gifts | _____ | + 0.00 | = 0.00 |
| Other (specify) _____ | _____ | + 0.00 | = 0.00 |
| **Total** | $ _____ | + $ 0.00 | = $ 0.00 |

**SCHEDULE G-1 AND SCHEDULE G-2 TOTAL**

* Enter, by category, the value of benefit passing where the expenditure did NOT exceed the $25/day or $200/calendar year thresholds.

**TOTAL AMOUNT OF REIMBURSED BENEFITS, IF ANY.**
**DO <u>NOT</u> DEDUCT THIS AMOUNT FROM BENEFIT PASSING AMOUNTS.**      $ _____

## SUMMARY OF LOBBYING EXPENDITURES

**EXPENDITURES**

| | | | |
|---|---|---|---|
| 1. Salary and Compensation | Schedule B Total | $ | 30,105.00 |
| 2. Support Personnel | Schedule C Total | | 0.00 |
| 3. Communication Expenses | Schedule E Total | | 0.00 |
| 4. Travel and Lodging | Schedule F Total | | 0.00 |
| 5. Benefit Passing | Schedule G-1 and Schedule G-2 Total | | 0.00 |
| **Total Lobbying Expenditures** | | $ | 30,105.00 |

**SUMMARY OF TOTAL RECEIPTS FROM REPRESENTED ENTITIES**      $      30,105.00

**CERTIFICATION**

This certification shall be signed by either the Governmental Affairs Agent filing this Annual Report on his/her own behalf, or by the Managing or Principal Partner or Chief Executive Officer of the Governmental Affairs Agent Firm.

I, Angelo Genova
_____
*(enter name)*

hereby certify that I am duly authorized by

Genova Burns LLC
_____
*(enter name of firm)*

to file and certify the accuracy and correctness of this Annual Report of Lobbying Activity for calendar year   2023   .
I certify that the statements made herein are true and accurate. I am aware that if any of the foregoing statements are willfully false, I may be subject to punishment.

Registration Number  **********          PIN  **********                    | Verify Registration Number & PIN |

_____ANGELO J GENOVA_____          _____February 14, 2024_____
Signature                                              Date
* Your name must appear on the signature line *

# EXHIBIT 11

STATE OF NEW JERSEY
DEPARTMENT OF THE TREASURY
FILING CERTIFICATE (CERTIFIED COPY)

Corporation Name:        ATLAS DATA PRIVACY CORPORATION
Business Id:             0451071286
Certificate Number:      6000228249


    I, THE TREASURER OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY, THAT THE ABOVE
NAMED BUSINESS DID FILE AND RECORD IN THIS DEPARTMENT AN ORIGINAL CERTIFICATE ON
January 12, 2024 AND THAT THE ATTACHED IS A TRUE COPY OF THIS DOCUMENT AS THE SAME IS
TAKEN FROM AND COMPARED WITH THE ORIGINAL(S) FILED IN THIS OFFICE AND NOW REMAINING ON
FILE AND OF RECORD.


                        IN TESTIMONY WHEREOF, I HAVE HEREUNTO SET MY
                          HAND AND AFFIXED MY OFFICIAL SEAL AT
                          TRENTON, THIS
                          March 21, 2024 A.D.



                          ELIZABETH MAHER MUOIO
                            STATE TREASURER


        VERIFY THIS CERTIFICATE ONLINE AT
        https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

NEW JERSEY DEPARTMENT OF THE TREASURY
DIVISION OF REVENUE AND ENTERPRISE SERVICES

### CERTIFICATE OF AUTHORITY

### ATLAS DATA PRIVACY CORPORATION
### 0451071286

The above-named FOREIGN FOR-PROFIT CORPORATION was duly filed in accordance with New Jersey State Law on 01/12/2024 and was assigned identification number 0451071286. Following are the articles that constitute its original certificate.

1. **Name:**
   ATLAS DATA PRIVACY CORPORATION

2. **Registered Agent:**
   REGISTERED AGENTS INC.

3. **Registered Office:**
   FIVE GREENTREE CENTRE, 525 ROUTE 73
   STE 104
   MARLTON, NEW JERSEY 08053

4. **Business Purpose:**
   DATA SERVICES

5. **Incorporated Under the Laws of:**
   DELAWARE ON 04/27/2021

6. **Effective Date of this filing is:**
   01/12/2024

7. **Main Business Address:**
   180 TALMADGE RD #218
   EDISON, NEW JERSEY 08817

   **Signatures:**
   MATT ADKISSON
   PRESIDENT

*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal 12th day of January, 2024*

*Elizabeth Maher Muoio*
*State Treasurer*

Certificate Number : 4230928779
Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

Continued on next page ...

Page 1 of 2

NEW JERSEY DEPARTMENT OF THE TREASURY
DIVISION OF REVENUE AND ENTERPRISE SERVICES

**CERTIFICATE OF AUTHORITY**

**ATLAS DATA PRIVACY CORPORATION**
**0451071286**



# Delaware

Page 1

The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "ATLAS DATA PRIVACY CORPORATION" IS
DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN
GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE
RECORDS OF THIS OFFICE SHOW, AS OF THE TWELFTH DAY OF JANUARY, A.D.
2024.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE
BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "ATLAS DATA
PRIVACY CORPORATION" WAS INCORPORATED ON THE TWENTY-SEVENTH DAY OF
APRIL, A.D. 2021.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE
BEEN PAID TO DATE.

5874663  8300
SR# 20240114553
You may verify this certificate online at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

Authentication: 202587500
Date: 01-12-24

Page 2 of 2

# EXHIBIT 13

🔒 **Page Vault**

| | |
|---|---|
| Document title: | The right to privacy and to attend the Mini Convention – NJ Cops Magazine |
| Capture URL: | https://njcopsmagazine.com/the-right-to-privacy-and-to-attend-the-mini-convention |
| Page loaded at (UTC): | Wed, 05 Jun 2024 19:44:07 GMT |
| Capture timestamp (UTC): | Wed, 05 Jun 2024 19:44:08 GMT |
| Capture tool: | 2.58.2 |
| Collection server IP: | 52.5.8.50 |
| Browser engine: | Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/121.0.6167.85 Safari/537.36 |
| Operating system: | linux x64 (Node v20.5.1) |
| PDF length: | 3 |
| Capture ID: | vjc1TAm8cQkyhZtRC6Gaug |
| User: | automation@page-vaul |

PDF REFERENCE #:     ugReAPWUY8Bkk5L4xcUKx8



Articles ⌄   About   Subscriptions   Current Issue   Event Calendar

# The right to privacy and to attend the Mini Convention

By Patrick Colligan  |  April 5, 2023

**President's Message**

Another successful Mini Convention is in the books. The meeting room was set for a record 1,360 people, and many of you were still standing in the back. And to the guy trying to find his hotel room at 7:45 a.m. while I was heading to breakfast, it's a marathon, not a sprint, buddy. Better luck next year. And to the few (thankfully) directors and chiefs who continue to want to interpret the Convention Leave Act, it's the LAW, not a contract issue. Shame on you.

If there has ever been a time for your officers to need a break and work on camaraderie, now is the time. They just aren't just about you and your agency. There is a reason morale is low in your place. Maybe it's time to look in the mirror.



We are faced yet again with a case of second-guessing journalists who seem to have an astounding understanding of police policy and procedure from the safety of their laptops. Police recently responded to a call from a person obviously in a deep psychiatric crisis. I'm not the only one in law enforcement to wonder why the video wasn't released earlier to quell the rumors and doubts. Time will unwind the narrative, and time will tell us what was done right and what was done wrong.

We always debrief, and we can always improve, but I have a few simple questions for the armchair experts out there. Have you ever had a front-row seat to a person in a deep psychiatric emergency? In obvious tight quarters? Can you tell me how to vet a "crisis negotiator" in the middle of the crisis? Are you aware we are responsible for everybody brought into a scene? Are you aware a mental health crisis professional is killed just about every year?

I could go on and on, but you get the point. We don't have the luxury to go back and edit the story like you do. And last time I checked, we can't respond to calls via Zoom.

There is a terrible doxxing issue going on there, too. The time is now to sign up for protection under Daniel's Law through Atlas Privacy. If you don't know about either, please speak to your State Delegate ASAP. The time to sign up is not after an event. By then it is too late. Otherwise you might see your photo, your house, your business and your salary on a website.

Thank you for your attendance in Atlantic City, and thank you for your kind attention. Most importantly, continue to stay safe!



NEXGEN ORTHOPEDICS
Focusing on Health & Wellness to prevent injury and avoid major surgery

ARE YOU TIRED OF BEING IN CONSTANT PAIN?

STEM CELL THERAPY    MASSAGE THERAPY
PHYSICAL THERAPY     ULTRASOUND GUIDED
VITAMIN INFUSIONS    INJECTION TREATMENT

CALL US AT
844-724-6735

## Get In Touch!

📞 201-880-7288

## Additional Resources

Current Issue



We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.    Accept    Privacy Policy

JA798

Another successful Mini Convention is in the books. The meeting room was set for a record 1,360 people, and many of you were still standing in the back. I apologize to the people we couldn't accommodate at this year's convention. If you didn't register in time, I guess there's better luck next year. And to the few (thankfully) directors and chiefs who continue to want to interpret the Convention Leave Act, it's the LAW, not a contract issue. Shame on you.

If there has ever been a time for your officers to need a break and work on camaraderie, now is the time. They just aren't just about you and your agency. There is a reason morale is low in your place. Maybe it's time to look in the mirror.



We are faced yet again with a case of second-guessing journalists who seem to have an astounding understanding of police policy and procedure from the safety of their laptops. Police recently responded to a call from a person obviously in a deep psychiatric crisis. I'm not the only one in law enforcement to wonder why the video wasn't released earlier to quell the rumors and doubts. Time will unwind the narrative, and time will tell us what was done right and what was done wrong.

We always debrief, and we can always improve, but I have a few simple questions for the armchair experts out there. Have you ever had a front-row seat to a person in a deep psychiatric emergency? In obvious tight quarters? Can you tell me how to vet a "crisis negotiator" in the middle of the crisis? Are you aware we are responsible for everybody brought into a scene? Are you aware a mental health crisis professional is killed just about every year?

I could go on and on, but you get the point. We don't have the luxury to go back and edit the story like you do. And last time I checked, we can't respond to calls via Zoom.

There is a terrible doxxing issue going on there, too. The time is now to sign up for protection under Daniel's Law through Atlas Privacy. If you don't know about either, please speak to your State Delegate ASAP. The time to sign up is not after an event. By then it is too late. Otherwise you might see your photo, your house, your business and your salary on a website.

Thank you for your attendance in Atlantic City, and thank you for your kind attention. Most importantly, continue to stay safe!





## Get In Touch!

📞 201-880-7288

Wayne, NJ 07470

✉ cops@njcopsmagazine.com

## Additional Resources

Current Issue

Gallery

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.   Accept   Privacy Policy

### NEW JERSEY COPS

New Jersey Law Enforcement and the only monthly publication that provides direct access to more than 65,000 Law Enforcement professionals across the state of New Jersey.

Document title: The right to privacy and to attend the Mini Convention – NJ Cops Magazine
Capture URL: https://njcopsmagazine.com/the-right-to-privacy-and-to-attend-the-mini-convention
Capture timestamp (UTC): Wed, 05 Jun 2024 19:44:08 GMT

JA799

Case 1:24-cv-04105-HB    Document 27-15    Filed 06/10/24    Page 1 of 15 PageID: 913

# EXHIBIT 14

**Atlas' Daniel's Law Service Terms**

**Last Updated: February 4, 2024**

Your use of the Atlas service is conditioned upon your acceptance of these Atlas Daniel's Law Service Terms. These Terms contain important information regarding your rights and Atlas' rights, and we encourage you to familiarize yourself with these provisions before accepting. If you do not understand any part of these Terms, we encourage you to consult with legal counsel or other advisors who can assist you.

To the extent that you are subject to other Atlas terms and conditions in connection with other products or services provided by Atlas, and those terms conflict with these Terms, these Terms will control with respect to the Daniel's Law services provided to you by Atlas. Your acceptance of these Terms will also constitute your acceptance of Atlas' privacy policy located at https://www.atlas.net/privacy-policy, as may be updated from time to time. Accordingly, please familiarize yourself with our privacy policy before accepting these Terms.

The Services may also include access to services provided by third-parties with whom we have a commercial relationship. In these instances, and in addition to any limitations contained herein, your use of such third-party services will be governed by the applicable terms of service and privacy policies of such third parties and Atlas shall not be responsible for any aspect of such third-party services.

**1. Definitions**

(a) "Terms" means these Atlas Daniel's Law Service Terms

(b) "Account" means the account created through the Atlas registration process

(c) "You" and "User" means the person creating the Account

(d) "We", "Us" or "Atlas" means Atlas Data Privacy Corporation d/b/a Atlas

(e) "Services" means Atlas Daniel's Law services and other services for which you subscribe through your Account

(f) "Website" means the atlas.net, atlasprotect.com, atlasweb.com (or other websites) operated by Us

**2. Registration**

Registration is the process by which you create an Account and subscribe for Services. The registration process will require you to provide us with information about you, which may include your name, physical addresses, email addresses, telephone numbers, and potentially other identifying information, such as copies of your valid driver's license or other identification, depending on the particular Services for which you are subscribing. In order for us to appropriately provide the Services, you represent that all of the information that you provide to us will be current, accurate, and complete. You may not open more than one Account. You may not open an Account if you are less than eighteen (18) years old, and by registering for the Services, you represent and warrant that you are at least eighteen (18) years old. To the extent that you provide information to us about anyone other than yourself, you represent that you have the legal right and/or their consent to do so and that all such information will be current, accurate, and complete. If any of the information you have provided changes, you agree to update your Account promptly. To the extent that login credentials such as usernames or passwords are created by or for you, you shall be solely responsible for maintaining the confidentiality of such credentials and will immediately update any such credentials that you believe may have become lost or compromised and notify Atlas.

**3. The Services**

As set forth herein, and as may be further described on our website or as otherwise communicated through your Account, the Services consist of access to our Atlas privacy platform, email services, and other functionality we make available in support of your rights under Daniel's Law or, if applicable, under other laws and regulations as may be applicable based on your Account subscription.

(a) Data Broker Scan and Monitoring

Atlas monitors the Internet to identify data brokers and other parties that disseminate personal information about individuals. To help you understand the extent to which your home address and telephone numbers are being published online by third parties, Atlas may search for you on publicly available sites. To conduct these searches, Atlas may use some of your personally identifiable information that you provide, such as your name, date of birth, address, etc. to locate records of you in third-party databases. Due to the nature of the data broker ecosystem, individual searches are not always accurate and there can be some false positive and false negatives. Furthermore, some data brokers do not make their information easily accessible to the public. This is why Atlas recommends, as a protective measure, that you send takedown notices to the lists of parties Atlas has identified, whether or not they are currently displaying your personal information.

(b) Web Form Opt-Outs

Atlas provides standardized templates for you to use for sending your takedown notices under Daniel's Law (the "Act," as defined herein), and which are designed to comply with the Act's notice requirements. Atlas recommends that users exercise extreme caution in any communications with data brokers or other parties to whom the user has sent or will send takedown notices under the Act.

(c) Atlas Email Platform ("AtlasMail")

To protect your privacy and to allow you to efficiently send your takedown notices by email, Atlas will supply you with an Atlas email account (e.g. example@atlasmail.com) to be used for communications with third-parties. To minimize email filter rejection rates, Atlas may use "alias" email addresses in connection with the takedown notices you send, provided that all responses to your emails using such alias protection, will be routed to your AtlasMail account.

You will be able to access your AtlasMail by logging into your Atlas account. In order to ensure your security and the effectiveness of our Services, we strongly recommend that you limit the use of your AtlasMail account to the sending of your takedown notices. To facilitate delivery of the Services, and for security purposes, we may monitor inbound and outbound email traffic to your AtlasMail account.

(d) Identity Defense Services

Your subscription to the Services may include access during the subscription term to the Identity Defense services (the "ID Services") provided by Intersections LLC d/b/a Pango Group and its affiliates ("Pango"). The ID Services are optional and include victim assistance and identity theft insurance. ID Services require enrollment, which can be done in Account, and you authorize Atlas to transmit your ID Services enrollment information to Pango. The ID Services are subject to the terms contained in the following documents www.identitydefense.com/legal/terms-of-use/; www.identitydefense.com/website-terms-of-use/; and www.pango.co/privacy-policy/ as same may be updated. You acknowledge that the ID Services are provided by an independent third party and Atlas makes no representations or warranties, and shall have no obligations or liability, to you in connection with the ID Services or your access and use of the ID Services. Atlas may discontinue providing access to the ID Services at any time upon notice posted to your account, posted on the Atlas website, or sent to you via your primary email address listed in your Account.

(e) Setting Expectations

While we will perform our Services to the best of our abilities, you acknowledge that in any given instance we may not be able, and do not represent or guarantee that the Services will be able to, facilitate or achieve the successful identification of third parties that possesses and/or publicly disclose your information, including your home address and telephone numbers or enforcement of your legal rights. Also, there is always the risk that recipients of your takedown notices may not comply with those notices. While protecting your rights and security are our paramount concern, privacy enforcement is challenging, and we want to be realistic with you in setting expectations and underscoring that privacy protection tends to be an ongoing process rather than a one-time activity.

(f) Atlas Other Commercial Relationships

As a provider of privacy services, Atlas may have commercial relationships with members of the regulated community, including parties that are recipients of your takedown notices, to provide services to or for them in assisting them in managing and meeting their obligations under the Act and other privacy regulations.

**4. Daniel's Law Service**

ATLAS-ALL_00000002

<u>(a) Daniel's Law Overview</u>

In November 2020, New Jersey Governor Murphy signed the Act which amended the Open Public Records Act (OPRA) and other statutes protecting personal information for certain persons in public service. The Act was enacted in response to the tragic killing of Daniel Anderl, the son of Judge Esther Salas and Mark Anderl. Specifically, the Act is designed to expand data privacy protections for personal information about active and retired judges, law enforcement officers, and prosecutors, and their immediate family members. Commencing in July 2024, the Act will also apply to child protective investigators in the New Jersey Division of Child Protection and Permanency.

The Act currently allows former, active, and retired judicial officers, prosecutors, and members of law enforcement and their immediate family members residing in the same household ("Covered Persons") to request removal and nondisclosure of their (i) <u>home address</u> by state, county, and local government agencies, and (ii) <u>home address and home telephone number</u> by private parties. With respect to private parties, the Act provides for a private right of action in the event of noncompliance with removal/non-disclosure requests.

<u>(b) Daniel's Law Definitions</u>

i. The "<u>Act</u>" or "Daniel's Law" means Daniel's Law (<u>See</u>, New Jersey P.L. 2023, c.113, P.L.2021, c.371, P.L. 2015, c.226).

ii. "<u>Covered Person</u>" means an active, formerly active, or retired judicial officer or law enforcement officer, as those terms are defined by section 1 of N.J. P.L.1995, c.23 (C.47:1A-1.1), or prosecutor and any immediate family member residing in the same household as such judicial officer, law enforcement officer, or prosecutor.

iii. "<u>Authorized Person</u>" means a Covered Person or any of the following persons hereby authorized to submit or revoke a request for the redaction or nondisclosure of a home address on behalf of a covered person:

(1) on behalf of any federal judge, a designee of the United States Marshals Service or of the clerk of any United States District Court;

(2) on behalf of any Covered Person who is deceased or medically or psychologically incapacitated, a person acting on behalf of the Covered Person as a designated trustee, as an estate executor, or pursuant to a written power of attorney or other legal instrument; and

(3) on behalf of any immediate family member who is a minor and who is otherwise entitled to address redaction or nondisclosure pursuant to this act, the parent or legal guardian thereof.

iv. "<u>immediate family member</u>" means a spouse, child, or parent of, or any other family member related by blood or by law to, an active, formerly active, or retired judicial officer or law enforcement officer, as those terms are defined by section 1 of P.L.1995, c.23 (C.47:1A-1.1), or prosecutor and who resides in the same household as such judicial officer, prosecutor, or law enforcement officer.

v. "<u>OIP</u>" means the New Jersey Office of Information Privacy.

<u>(c) Public Records Removal</u>

In order to have your home address removed under the Act from state, county and local government agency websites, you need to register with and be approved by the OIP. The OIP is a New Jersey state agency that was created to implement certain aspects of the Act relating to redaction and/or nondisclosure requests to State, county, and local government agencies to prevent those agencies from publicly disclosing protected information. The Act contains certain exceptions to the redaction and/or nondisclosure of information from public agency records, and individuals wishing to familiarize themselves with these and other provisions of the Act should consult the text of the Act, which can be accessed here: https://pub.njleg.state.nj.us/Bills/2022/S3500/3125_R4.PDF. Public records redaction is handled solely by the OIP and not by Atlas. You may learn more about the OIP and register with the OIP for public records removals through their website: https://danielslaw.nj.gov. Atlas allows you to designate the recipients of your takedown notices solely with respect to <u>private parties</u>.

**In connection with the Services, you acknowledge that Atlas is not affiliated with the OIP or any other New Jersey State agency and, instead, is a privately owned commercial service provider that provides tools for eligible individuals to enforce their privacy rights under the Act against other parties.**

<u>(d) Private Party Records Removal</u>

(i) Overview

The Act permits Covered Persons (and Authorized Persons acting on their behalf) to request third parties disclosing or "otherwise making available" their home address and/or unpublished home telephone number on the Internet or otherwise make available to discontinue such disclosure or availability. The Atlas platform employs commercially reasonable efforts to identify such third parties, allows Covered/Authorized Person to deliver takedown notices under the Act to such third parties and provides some compliance monitoring related to those notices, which may vary depending on the recipient. To provide a wide scope of protection, the Atlas platform will allow you to send your takedown notices to entities that may not currently possess your data, thereby potentially prohibiting them from disclosing or otherwise making available your information in the future. Your eligibility as a "Covered Person" or an "Authorized Person" is based solely on your meeting of the Act's definitions of those terms. As part of the sign-up process, Atlas will ask you some eligibility questions regarding your law enforcement employment history and whether you have a primary or secondary residence in New Jersey, however Atlas' approval of your account should not be relied on as confirmation that you have met the eligibility criteria for protection under the Act.

(ii) Third-Party Selection

As noted herein, Atlas monitors the Internet to identify parties that may be publishing or selling personal information on the Internet and, for your convenience, creates lists of those parties as suggested recipients for your takedown notices. Due to the dynamic nature of this landscape and the difficulty in detecting information that is not always directly accessible, the lists compiled by Atlas necessarily do not capture every party that may be publishing your information. By design, Atlas has used its discretion to focus its lists on those parties who Atlas believes have substantial operations in the collection, publication or selling of personal information. However, the Atlas platform will allow you to send your takedown notices to any party for whom you have an email address, whether or not they appear in a list prepared by Atlas. The lists prepared by Atlas are subject to updating from time to time as parties are identified, and you may indicate that you wish to send your takedown notices to such additional parties as they are identified by Atlas. While the lists prepared by Atlas are meant to streamline your process of selecting recipients of your notices, you may at any time access your Account to update your notice delivery selections.

Atlas offers several subscription tiers for its Daniel's Law services. The suggested lists that Atlas provides of third-parties to whom you may send your notices may vary based on your subscription tier, however, you will always be able to use AtlasMail to manually send takedown notices to any party.

(iii) Takedown Notice Format

Takedown notices will contain your name, home address and home telephone number and will identify you as a Covered Person under the Act. The Atlas templates are drafted so that you will send a separate takedown notice for each of your home addresses and home phone numbers. Below is a representative sample of the format for the address template to be used. (Separate templates are supplied for phone numbers and notices sent on behalf of other parties)

---

**Sample Takedown Notice Template - Address**

[Date]

*To Whom It May Concern:*

*I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), and I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:*

*Name: John J Doe*

*Home Address: 123 Main St. Anytown, NJ 12345*

*Sincerely,*

*John J Doe*

---

Confidential

ATLAS-ALL_00000004

(iv) Sending Takedown Notices

To protect your privacy, your takedown notices delivered through the Atlas platform will be sent through your AtlasMail. However, it is important to note that some recipients of takedown notices may not possess some or all of the information in your notice prior to receipt of your takedown notice.

Atlas provides email addresses for the parties contained in the lists generated by Atlas, and uses its judgment in selecting the appropriate addresses for your takedown notices. However, Atlas cannot guarantee, and does not represent, that such parties will accept takedown notices delivered to such email addresses or that the email addresses selected by Atlas are correct. If a third party changes their email address, or in instances of failed delivery or if Atlas identifies a more suitable email address or other method of delivering notice to a party, then Atlas may deliver or redeliver your takedown notice to such other address or by such other method.

The Atlas platform will schedule the delivery dates of your takedown notices based on a variety of factors, including, completion of pending updates, testing or maintenance of the Atlas platform, the need to confirm additional information about you or the recipients of your takedown notices, the desirability of batching notices for administrative purposes or to realize efficiencies in notification and delivery, however, the Atlas platform will also let you send individual takedown notices on an immediate basis to any third party. Information about current notice delivery scheduling and timing is available in your Account.

**With respect to your takedown notices, you, and not Atlas, are the sender. Other than as provided herein, Atlas shall have no authority to negotiate with recipients of your takedown notices or otherwise waive or settle any claims that you may have arising out of noncompliance with your takedown notices; however, to the extent that a claim arising under one of your takedown notices is assigned to Atlas or its affiliates pursuant to an Assignment Confirmation, after such assignment, Atlas or, as applicable, its affiliate may manage the prosecution and resolution of such claim in its sole discretion.**

(v) Updating Your Information/ Withdrawing Takedown Notices

It is important that you update your Account with any changes of address or status.

(1) Change of Personal Information: The Act does not provide specific guidance on the procedure to be followed if the personal information contained in your previously delivered takedown notices change. Our recommendation is that if you change your address, telephone number or name, you should not voluntarily withdraw takedown notices you have delivered for your old information, as this information may still be used to locate or communicate with you. However, immediately upon a change of address, telephone number or name, we recommend that you send new takedown notices covering the new information. The Atlas platform provides workflows to streamline this process and additional information on this process is available in your Account.

(2) Change of Status – Immediate Family Member: If you have sent takedown notices on the basis that you are an immediate family member of a Covered Person and reside in the same household as they do, and thereafter you no longer reside with that Covered Person, the Act requires that within thirty (30) following such change in status, you send notification of such change of status to all parties to whom you have sent takedown notices. The Atlas platform provides functionality for sending these change of status notifications and information on how to do so is available in your Account.

(3) Voluntary Withdrawals - The Atlas platform will allow you to withdraw takedown notices you have previously sent. However, voluntary withdrawals of takedown notices should be considered carefully, as the withdrawal may compromise your privacy. Such withdrawals may also affect any potential or pending claims for damages or other relief that you may have for non-compliance with the takedown notice(s) to be withdrawn. **For this reason, you agree that without the prior written consent of Atlas for any takedown notice that is subject of an Assignment Confirmation, you will not voluntarily withdraw that takedown notice.**

(vi) Minors / Authorized Persons - Individuals under 18 years old may not use the Atlas platform to send takedown notices. While Atlas has found that data brokers generally do not publish information online about minors, the Act permits parents and legal guardians to send takedown notices as "Authorized Persons" on behalf of immediate family members under 18 year of age who reside with a Covered Person. The Atlas platform allows Authorized Persons to send takedown notices on behalf of minors and other qualifying individuals and information on how to do so is available in your Account. To the extent that you use the Atlas platform to send

takedown notices as an Authorized Person on behalf of another person, you represent and warrant to Atlas that you are eligible to do so.

(e) Formal Enforcement Actions

To support compliance with private party takedown notices, the Act provides a private right of action – meaning that individuals and their assignees have the right to bring legal actions against private parties that fail to honor their takedown notices. In the event of a violation, the Act provides for liquidated damages in the amount of $1,000 per violation and allows for the recovery of attorney's fees, among other remedies.

(i) Actions where you are a plaintiff.

To the extent that third parties fail to honor your takedown notices under the Act, we may facilitate introductions to counsel who may be able to provide you and/or your eligible family members with the opportunity to participate individually, collectively, or as putative class members in formal legal action(s) to enforce your and their rights and recover damages and other relief. You acknowledge that we may provide information about you and relating to your takedown notices to potential and actual counsel to support the enforcement of your rights under the Act. Such counsel would typically only receive compensation in connection with awards of damages or settlements received as a result of their efforts. The choice to participate in each such instance of formal legal action will be at your sole discretion, and if applicable, the discretion of your eligible family members. Our role in these situations is as a facilitator, and not as your attorneys, and we shall not be responsible for the any aspect of the conduct of such legal actions.

**Separate from any attorney's fees, in connection with damage awards or settlements recovered by you that result from takedown notices delivered through the Atlas platform, you agree that Atlas will be entitled to receive compensation from you in the form of the Service Fee, as outlined in below in Section 5 (Payment).**

(ii) Assignments - Actions where Atlas or its affiliates are the plaintiff.

In certain circumstances Atlas may in its discretion determine that an efficient method of prosecuting takedown notice enforcement actions is through civil litigation whereby individual claims are aggregated and prosecuted by Atlas or its affiliates. **To this end, upon a written notice from Atlas (which may be sent to you by email or within the Atlas application) which shall both trigger and confirm your legal assignment to Atlas or an affiliate of Atlas (as applicable, the "Assignee") of your right to bring civil enforcement actions for violation of your rights under the Act in connection with one or more of your takedown notices delivered through the Atlas Services (each such notice an "Assignment Confirmation"), you shall be deemed, upon your receipt of such Assignment Confirmation, to have irrevocably assigned to the Assignee all of your rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of your rights under the Act with respect to the takedown notices covered by the Assignment Confirmation and following such assignment, the Assignee will have the exclusive right to bring such civil enforcement actions anywhere in the world with respect to those takedown notices covered by the Assignment Confirmation. To the extent that the Assignee requires further written confirmation of such assignment(s), you hereby irrevocably appoint Atlas as your attorney-in-fact to execute any such further written assignments or confirmations on your behalf, and such appointment is coupled with an interest.** Atlas affiliates serving as Assignees shall be deemed third-party beneficiaries of these Terms and may enforce them in their own right.

**Revenue Share on Recoveries Under Assignment Confirmations: (i) Settlements: For claims against third parties for non-compliance with your takedown notices that have been transferred to an Assignee pursuant to Assignment Confirmations and which are resolved through settlement, from the net amounts of settlements received by the Assignee (i.e., amounts actually collected, less third-party attorney's fees and associated investigation, litigation and collection costs and expenses), Atlas will cause the Assignee to remit to you sixty-five percent (65%) of the pro-rata portion of such amounts allocable to the takedown notices covered by your Assignment Confirmation, with such amounts to be paid with thirty (30) days following the Assignee's receipt of such amounts. (ii) Judgments: To the extent that amounts are recovered by Assignee by way of judgment, instead of settlement, for non-compliance with your takedown notices that have been transferred to an Assignee pursuant to Assignment Confirmations, Atlas will cause the Assignee to pay to you sixty-five percent (65%) of the net amounts of such judgment recoveries received by the Assignee (i.e., amounts actually collected less third-party attorney's fees and associated investigation, litigation, and collection costs and expenses allocable to the takedown notices subject to your Assignment Confirmation, with payment to be made within thirty (30) days following the Assignee's**

**receipt of such amounts. With respect to judgment recoveries, the Assignees may be eligible to recover from the defendant(s) reasonable attorneys' fees, costs, and litigation expenses incurred, and any amounts of attorney fees and litigation costs so recovered will be offset against such actual amounts of attorney's fees and litigation costs actually incurred in computing net amounts payable hereunder, provided that any amounts of attorney's fees and litigation costs recovered that are in excess of actual attorney's fees and actual litigation costs incurred will not be included in the amounts to be shared with you hereunder.**

To the extent that the Assignee reasonably requires you to sign and/or provide any tax documents or other documents or information in order to make payments to you, such payments may be withheld until you have delivered to Atlas such documents or information. The Assignee shall use its good faith discretion in prosecuting and settling claims covered by Assignment Confirmations, and in doing so may take into consideration a variety of factors in prosecuting and settling such claims, including but not limited to, the achievement of future compliance, the certainty afforded by settlement, and the challenges presented by potential legal defenses.

To support compliance, as part of or in parallel to settlement or enforcement of claims covered by Assignment Confirmations, Atlas may enter into service agreements with defendants in such actions and the fees payable to Atlas under such service agreements will not be included in the net pro-rata amounts payable to you in connection with such actions. Atlas will use its good faith discretion to ensure that such service fees payable to Atlas as part of such settlements will not materially exceed its standard commercial rates for comparable services for similarly situated customers.

All litigation has inherent uncertainties of outcome and, accordingly, neither Atlas nor its affiliates make any representations or warranties regarding their ability to achieve successful or maximum value damage awards or settlements of actions arising under Assignment Confirmations or that Assignment Confirmations will achieve better outcomes than other approaches for enforcement of claims arising under your takedown notices delivered using Atlas' Services.

**5. Payment**

Atlas is compensated for its Services through a combination of (a) Subscription Fees and (b) outcome-based Service Fees that are computed as a percentage of any damages awards or settlements recovered by you under the Act as a result of or in connection with your takedown notices delivered through the Atlas platform.

<u>Subscription Fees</u>

Subscription Fees for the Services are set forth in the registration process and/or the Website and/or your Account and vary according to the following Services plans:

<u>(a) Enterprise or Group Affiliated Plans</u> - In some instances, you may be a member of a union or other organization whose membership plans include payment of all or a portion of your Subscription Fees for Atlas' Daniel's Law Services. In that instance, a separate Subscription Fee may not be due from you, but subscription fees may be applicable for any Atlas additional services for which you may subscribe.

<u>(b) Individual Plans</u> - If your Subscription Fees have not been paid by a third-party, you can still use the Service in exchange for the Subscription Fee identified on the Atlas website or through your Account. Individual plans are offered with a variety of different features that are accessible in your Account and provide various levels of data broker coverage.

<u>(c) Limited Subscription Plan</u> – Atlas also offers a Subscription plan for the Services that does not require payment of Subscription Fees, but for which Service Fees remain applicable. This plan does not include coverage of the full array of data brokers identified by Atlas and provides limited access to other services.

Details on the specific features that are included in your subscription plan are contained in your Account. However, under any plan, you may send takedown notices through AtlasMail at any time to any additional parties that you identify. Atlas reserves the right from time to time to modify the scope of the Services and the Subscription Fees it charges for access to the Services.

<u>Service Fees</u>

The Service Fees charged by Atlas supports our development of the platform and related services and is payable to Atlas only if there is a monetary recovery for violations of your rights under the Act. With respect to the amount of damages awarded and/or settlements that are recovered by you (and/or your eligible family member for whom you have subscribed) in connection with or as a result of the

ATLAS-ALL_00000007

Services for violations of the Act, you hereby irrevocably assign to Atlas thirty-five percent (35%) thereof (the "Service Fee") and will make payment to Atlas for the Service Fee within fourteen (14) days following your receipt of the recovered amounts. In support of your payment obligation to Atlas, you hereby irrevocably appoint Atlas as your attorney-in-fact, and such appointment is coupled with an interest, to instruct your attorneys or other parties in possession or control of such damages or settlement amounts, including settlement agents, to make payment of applicable Service Fees directly to us on your behalf and, as applicable, on behalf of such eligible family members, and amounts paid by them will constitute amounts paid by you and, as applicable, such eligible family members. We may deliver such instructions in our own name and/or your name, including through written instructions bearing auto-generated or electronic versions of your signature. **As noted above, Assignment Confirmations have their own recovery sharing formula and separate Service Fees will not be due for recoveries under takedown notices for which Assignment Confirmations are in effect.**

**Service Fee Computation**: **Service Fees are computed on gross amounts of recovery. By way of example, in the event that a takedown notice delivered by you through the Atlas Services results in a damages or settlement recovery by you in the total amount of $1,000, the amount of Service Fee payable by you to Atlas in connection with that recovery would be computed by applying the thirty-five percent (35%) Service Fee rate to the full $1,000, without taking into account of or adjusting for payments, if any, made or to be made by you to any other parties in connection with such recovery, resulting in a Service Fee of $350 due to Atlas.**

**You acknowledge that the amount and method of computation of the Service Fees are fair and reasonable in exchange for the Services provided by Atlas in connection with the enforcement of your and your eligible family members' rights under the Act.**

You agree to make payment or direct payment to us for applicable fees. You will only be responsible for Service Fees to the extent that you receive damages awarded and/or settlements. In the event that you do not make payment to us of applicable fees or prevent payment to us of Service Fees, in addition to any other remedies, we may immediately suspend or terminate the provision of the Services to you and will provide notice of any such suspension or termination to your personal email address that you have provided when creating your Atlas Account.

Attorneys representing the Covered Persons (or assignees, such as Atlas) may also be entitled to recover their reasonable attorneys' fees, costs, and litigation expenses from the defendant(s) and any such attorney's fees awarded by a court will not be included as part of your recovery for the purpose of computing the Service Fees due to Atlas.

**6. Support**

To reach our customer support team, please e-mail us at support@atlas.net. Providing our representatives with all the information they need to solve your problem will expedite your request for assistance. These communications may involve retained attorneys and will be subject to the attorney-client privilege.

**7. Restrictions**

Atlas may verify your Account prior to providing access to all of the Services, and functionality may be limited or suspended pending verification.

In order to protect the integrity of the Website, the Services and our systems, you agree that you will not, and will not permit others to:

- Reproduce, modify, adapt, prepare derivative works based on, perform, display, publish, distribute, transmit, broadcast, sell, license or otherwise exploit the Services or any component thereof.

- Make use of the Services for anyone or any purpose other than on behalf of yourself and any eligible family members for whom you have enrolled in the Services.

- Circumvent, disable or otherwise interfere with security related features of the Services or Website or features that prevent or restrict use or copying of any content.

- Interfere with or disrupt (or attempt to interfere with or disrupt) the operation of the Website or Services.

- Attempt to decipher, decompile, disassemble or reverse engineer any of the software used to provide the Website or the Services.

Confidential

ATLAS-ALL_00000008

- Impersonate or misrepresent your affiliation with any person or entity, through pretexting or some other form of social engineering or otherwise commit fraud.

- Post, upload, or otherwise transmit through the Website or the Services any content that is unlawful, obscene, harmful, threatening, harassing, defamatory or hateful or that contain objects or symbols of hate, invade the privacy of any third party, contain nudity (including without limitation any pornography), is deceptive, threatening, abusive, inciting of unlawful action, defamatory, libelous, vulgar or violent or constitute hate speech or is otherwise objectionable in our opinion; that infringes the intellectual property rights or violates the privacy rights of any third party (including without limitation copyright, trademark, patent, trade secret, or other intellectual property right, or moral right or right of publicity), or otherwise violates or promotes the violation of the rights of any third party; that contains software viruses or any other computer code, files, or programs designed to interrupt, destroy or limit the functionality of any computer software, or interferes with the access of any user, host or network, including without limitation sending a virus, overloading, flooding or spamming the Website or the Services.

- Use the Website or the Services in any manner not permitted by these Terms or applicable law.

- Encourage or instruct any other individual to do any of the foregoing or to violate any of these Terms.

Upon any actual, threatened, or suspected violation by you of the foregoing restrictions or any other provision of this Agreement or any other applicable Atlas policies, we may immediately suspend your access to all or a portion of the Services without advance notice.

**8. Disclaimer of Warranties**

Your use of the Website, Services and any other information, products, functionality or software made available through the Website or the Services is at your sole risk and discretion and we hereby disclaim all liability to you or any third party relating thereto. The Website, Services and all materials, information and products included therein, are provided on an "as is" and "as available" basis without warranties of any kind. We expressly disclaim all warranties of any kind, express, implied or statutory, relating to the Websites and Services, including without limitation the warranties of title, merchantability, fitness for a particular purpose, non-infringement of proprietary rights, course of dealing or course of performance.

Not in limitation of the foregoing, we disclaim any warranties:

- Regarding the security, accuracy, reliability, timeliness and performance of the Website or the Services.

- That the Website or the Services will be error-free or that any errors will be corrected.

- That the Website or the Services will be of any particular quality, meet any standards or requirements, or conform to any of your expectations in this regard.

- Regarding the performance of third parties, including counsel enforcing your rights under the Act.

- Regarding the degree of protection afforded by the Act or Atlas' Services.

No advice or information, whether oral or written, obtained by you from us, will create any warranty not expressly stated in these Terms. Some states or jurisdictions do not allow the exclusion of certain warranties. Accordingly, some of the above exclusions may not apply to you. Our ability to confirm the identity of users of Website or Services or monitor their behavior is necessarily limited, accordingly, we disclaim all liability for actions of third parties that reflect theft or any other misuse of your identity or other personal information. **Additionally, nothing in these Terms, the Website or the Services shall be construed as legal advice from Atlas and its affiliates, and no attorney-client relationship is intended or shall arise out of these Terms, the Website or the Services**.

Third Parties' Software, Content and Actions. We are not responsible for:

- The content, services, applications or availability of third parties' websites that you access using the Website or the Services, including but not limited to the ID Services.

- The availability, performance, functionality or any consequences of your use of any third parties' components, software, modules built into or otherwise integrated and available through the Website or the Services, including but not limited to the ID Services.

Confidential

ATLAS-ALL_00000009

- Legal services provided by counsel in connection with the enforcement of your rights under the Act and/or your takedown notices.

- Acts or omissions of third parties, including but not limited to the provider(s) of the ID Services.

**9. Limitation of Liability**

IN NO EVENT WILL WE, OUR OFFICERS, DIRECTORS, EMPLOYEES, AFFILIATES, ATTORNEYS OR AGENTS, BE LIABLE TO YOU FOR ANY DAMAGES WHATSOEVER, INCLUDING WITHOUT LIMITATION, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH YOUR USE OF THE WEBSITE AND/OR SERVICES, SERVICES OF THIRD PARTIES TO WHICH WE HAVE PROVIDED ACCESS, OR PROSECUTION OF CLAIMS UNDER ASSIGNMENT CONFIRMATIONS, WHETHER THE DAMAGES ARE FORESEEABLE AND WHETHER OR NOT WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING LIMITATION OF LIABILITY WILL APPLY TO THE FULLEST EXTENT PERMITTED BY LAW IN THE APPLICABLE JURISDICTION AND IN NO EVENT WILL OUR CUMULATIVE LIABILITY TO YOU EXCEED AMOUNT OF THE SERVICE FEES ACTUALLY PAID BY YOU IN THE SIX (6) MONTHS PRECEDING THE EVENT GIVING RISE TO YOUR CLAIM OR, IF NO FEES APPLY, FIFTY ($50) U.S. DOLLARS. TO THE EXTENT THAT WE ARE PROVIDING SERVICES TO A THIRD PARTY AND AS A RESULT OF OUR ACTS OR OMMISSIONS IN PROVIDING THOSE SERVICES, YOU SUSTAIN A LOSS, INJURY OR OTHER VIOLATION OF RIGHTS, TO THE MAXIMUM EXTENT PERMITTED BY LAW, NEITHER WE NOR SUCH THIRD PARTY WILL HAVE ANY LIABILTY TO YOU OR ANY PERSON CLAIMING THROUGH OR ON BEHALF OF YOU AND YOU EXPRESSLY ACKNOWLEDGE THAT SUCH THIRD PARTIES TO WHOM WE PROVIDE SUCH SERVICES ARE IDENTIFIED THIRD-PARTY BENEFICIARIES OF THIS LIMITATION OF LIABILITY AND MAY ENFORCE SUCH LIMITATION AGAINT YOU OR OTHER PERSONS CLAIMING THROUGH YOU OR ON YOUR BEHALF.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THESE TERMS WE SHALL NOT BE LIABLE FOR DELAYS, INTERRUPTIONS, SERVICE FAILURES AND OTHER PROBLEMS INHERENT IN USE OF THE INTERNET AND ELECTRONIC COMMUNICATIONS OR OTHER SYSTEMS OUTSIDE OUR REASONABLE CONTROL.

THE PROVISIONS OF THIS SECTION ALLOCATE THE RISKS UNDER THESE TERMS BETWEEN THE PARTIES, AND THE PARTIES HAVE RELIED ON THESE LIMITATIONS IN DETERMINING WHETHER TO ENTER INTO THESE TERMS.

**10. Indemnification**

You agree to defend, indemnify, and hold us, our parents, subsidiaries, affiliates, customers, vendors, and their respective officers, directors, employees, attorneys and agents, harmless from and against any claims, liabilities, damages, losses, and expenses, including without limitation reasonable attorney's fees and costs, arising out of or in any way connected with:

- Your access to or use of the Website, the Services or services provided by third parties.

- Your violation of these Terms.

- Your violation of any third-party right, including without limitation any intellectual property right, publicity, confidentiality, property or privacy right.

**11. External Links**

The Website or the Services may contain external links that provide links to third-party websites or resources. You acknowledge and agree that we are not responsible or liable for the availability or accuracy of, and we do not endorse, such websites or resources or the content, products, or services on or available from such websites or resources. When you follow a link, or engage with a third-party service, website, resource you are interacting with the third party, not with us. You acknowledge sole responsibility for and assume all risk arising from your use of any such websites, products, content, promotions services or resources. Your access, purchase or use of any website, product or service, and any information provided by you or collected as a result of such interaction, shall be governed by the applicable third-party privacy policy, data gathering practices, terms of use or other agreements.

**12. Modification**

We reserve the right, at our sole discretion:

- To modify or revise these Terms at any time by posting the amended Terms on the Website. Please check the most current

ATLAS-ALL_00000010

Terms to ensure that you are aware of all the terms governing your use of the Website and the Services.

- To make changes, update or discontinue the Website, Services or any format, feature or functionality thereof at any time with or without notifying you.

- To terminate or restrict access to the Website or the Services for any reason whatsoever.

Your continued use of the Website or the Services after a change or update has been made will constitute your acceptance to the revised Terms. If you do not agree with the modifications, please discontinue use of the Website and the Services immediately, and cancel the account you have opened with us. Notwithstanding the foregoing, any modification of the Service Fee rate will require your express consent.

**13. Termination and Account Cancellation**

Your subscription for Services will remain effective until expiration or until terminated by you or us in accordance with these Terms.

Termination by You. You may terminate your subscription to the Services at any time upon written notice delivered to support@atlas.net, provided that any such termination will not affect our right to receive Service Fees with respect to takedown notices that have been delivered through the Atlas platform prior to such termination date.

Termination by Us. Without limiting other remedies, we may suspend or terminate these your subscription for Services, these Terms with you, or may terminate or suspend your use of the Website or the Services, and/or may remove any of your data at any time if:

- You violate any term of these Terms.

- You infringe proprietary rights, rights of privacy, or intellectual property rights of any person, business or organization.

- You engaged in other actions relating to or in the course of using the Website or the Services that may be illegal or cause liability, harm, embarrassment, harassment, abuse or disruption for you, other Users, us, any other third parties or for the Website or the Services.

- You have 'charged back' or denied any of the payments that you made for your subscription.

- It is required by applicable law.

- We cease offering the services and/or discontinued the Website or the Services.

- Notwithstanding the foregoing, we also reserve the right to terminate the Website, Services or cancel your account at any time and for any reason.

Effect of Termination. Upon termination of your subscription for Services or these Terms, all licenses and rights to use the Website and the Services shall immediately terminate; and you will immediately cease any and all use of the Website and the Services. Upon such termination, Atlas will no longer pay for subscription or other fees for your access and use of services provided by third parties, including the ID Services, and your access and use of such services may terminate unless you make payment arrangements and/or enter into subscription agreements directly with such third-party service providers.

Upon any termination you will no longer be able to access data or content submitted by you. We will have no obligation to maintain any information or content stored in our database related to your account or to forward any information to you or any third party, provided that we may retain such information for: (a) archival purposes, (b) as may be necessary or advisable in connection with enforcement of outstanding takedown notices, (c) confirmation of you and your eligible family members as Covered Persons under the Act in connection our agreements with third parties to provide support in connection with compliance under the Act, (d) for enforcement of our or our affiliates' rights, including in connection with the enforcement of Assignment Confirmations, or for other internal business purposes, or (e) to enable third parties to comply with and/or avoid violating your rights under the Act, whether or not they have received a takedown notice from you.

**Any suspension, expiration or termination of your subscription for Services and/or these Terms will not affect your obligations to us under these Terms, including, without limitation, payment of Service Fees in connection with takedown notices delivered through the Atlas platform prior to such suspension, expiration or termination, proprietary rights and ownership, indemnification and limitation of**

**liability, confidentiality, which reasonably are intended to survive such expiration, suspension or termination, nor will expiration, suspension or termination affect our or our affiliates' rights with respect to Assignment Confirmations delivered to you prior to such expiration, suspension or termination.**

In addition to any other available relief, Atlas, and as applicable it affiliates, shall be entitled to recover their reasonable attorney's fees in connection with any action to recover payments due from you to Atlas, or to enforce their rights under these Terms.

**14. Intellectual Property**

The Website, the Service and Atlas' original content (excluding Content provided by users), features and functionality contained within are and will remain the exclusive property of Atlas and its licensors. The Website and Service are protected by copyright, trademark, and other laws of the United States and foreign countries and may not be used without prior written consent of Atlas.

**15. Copyright Policy**

Atlas respects the intellectual property rights of others. It is our policy to respond to any claim that Content posted on the Website or Service infringes on the copyright or other intellectual property rights ("Infringement") of any person or entity.

If you are a copyright owner, or authorized on behalf of one, and you believe that the copyrighted work has been copied in a way that constitutes copyright infringement, please submit your claim via email to support@atlas.net, with the subject line: "Copyright Infringement" and include in your claim a detailed description of the alleged Infringement as detailed below, under "DMCA Notice and Procedure for Copyright Infringement Claims."

You may be held accountable for damages (including costs and attorneys' fees) for misrepresentation or bad-faith claims on the infringement of any Content found on and/or through Service on your copyright.

**16. DMCA Notice and Procedure for Copyright Infringement Claims**

You may submit a notification to Atlas pursuant to the Digital Millennium Copyright Act (DMCA) by providing our Copyright Agent with the following information in writing (see 17 U.S.C 512(c)(3) for further detail):

(a) an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright's interest.

(b) a description of the copyrighted work that you claim has been infringed, including the URL (i.e., web page address) of the location where the copyrighted work exists or a copy of the copyrighted work.

(c) identification of the URL or other specific location on Service where the material that you claim is infringing is located.

(d) your address, telephone number, and email address.

(e) a statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law.

(f) a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf.

You can contact Atlas' Copyright Agent via email at legal@atlas.net.

**17. Legal Actions**

Choice of Law. You agree that the laws of the State of New Jersey govern these Terms, their subject matter, the relationship between you and us, any action related these Terms, and any claim or dispute it may arise, without regard to the conflict of laws rules, and that the United Nations Convention on Contracts for the International Sale of Goods shall have no applicability.

Location for Resolving Disputes. You further agree that any disputes or claims related to these Terms will be resolved by state courts located in the State of New Jersey, and you agree and submit to the exercise of personal jurisdiction of such courts for the purpose of litigating any such claim or action. BY AGREEING TO THESE TERMS, YOU ARE: WAIVING CLAIMS THAT YOU MIGHT OTHERWISE HAVE AGAINST US BASED ON THE LAWS OF OTHER JURISDICTIONS, INCLUDING YOUR OWN, IRREVOCABLY CONSENTING TO THE

Confidential

ATLAS-ALL_00000012

EXCLUSIVE JURISDICTION OF, AND VENUE IN, THE STATE COURTS LOCATED IN NEW JERSEY OVER ANY DISPUTES OR CLAIMS YOU HAVE WITH US, AND SUBMITTING YOURSELF TO THE PERSONAL JURISDICTION OF SUCH COURTS FOR THE PURPOSE OF RESOLVING ANY SUCH DISPUTES OR CLAIMS.

<u>Class Action Waiver</u>. IN CONNECTION WITH ANY LEGAL ACTION ARISING OUT OF OR IN CONNECTION WITH THESE TERMS, THE WEBSITE OR THE SERVICES, YOU HEREBY WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ATLAS OR ITS AFFILIATES AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT YOU ARE PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ATLAS OR ITS AFFILIATES, YOU AGREE THAT: (I) YOU SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION; AND (II) YOU WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**18. General**

<u>(a) No Agency</u>. Excluding your appointment of Atlas as your attorney-in-fact for delivering your Service Fees payment instructions, no joint venture, partnership, employment, or agency relationship exists between you and Atlas or its affiliates as a result of these Terms or use of the Services. **Neither Atlas nor its affiliates shall have or be deemed to have fiduciary status or duties to you with respect to the Services or enforcement of takedown notices under Assignment Confirmations.**

<u>(b) Government Use</u>. Nothing in these Terms makes us a government contractor or agent of any governmental body or agency.

<u>(c) Notices</u>. Any notices or other communications permitted or required under these Terms will be in writing and given:

By You:

-
    - to legal@atlas.net

By Us:

-
    - Via email (to the address that you provide during registration), or
    - By posting to the Website.

<u>(d) Consent to Receive Communications in Electronic Form</u>. For contractual purposes, you:

- Consent to receive communications from us in an electronic form via the email address you have submitted, by text and phone to the phone number(s) you have provided; and
- Agree that the Terms and all agreements, notices, disclosures, and other communications that we provide to you electronically satisfy any legal requirement that such communications would satisfy if it were in writing.

<u>(e) Assignment</u>. You will not assign these Terms or assign any rights or delegate any obligations hereunder, in whole or in part, whether voluntarily or by operation of law, without our prior written consent. Any purported assignment or delegation by you without our appropriate prior written consent will be null and void. We may assign these Terms or any rights hereunder without your consent.

<u>(f) No Waiver</u>. The failure by us to exercise, or delay in exercising, a legal right or remedy provided by these Terms or by law shall not constitute a waiver of our right or remedy.

<u>(g) Severability and Integration</u>. These Terms constitute the entire agreement between you and us regarding the subject matter hereof and supersede all previous written or oral agreements regarding the subject matter hereof. If any part of these Terms is held invalid or unenforceable, that portion shall be construed in a manner consistent with applicable law to reflect, as nearly as possible, the original intentions of the parties, and the remaining portions shall remain in full force and effect.

Confidential

ATLAS-ALL_00000014

# EXHIBIT 15

| SenderAddress | ToRecipients | CreatedDate | MessageSubject |
|---|---|---|---|
| [REDACTED]38@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:02.9785 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]64@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:11.2677 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]38@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:12.2367 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]70@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:14.1288 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]33@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:15.2071 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]38@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:19.2255 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]88@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:22.3044 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]74@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:25.2435 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]33@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:27.9086 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]88@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:30.9427 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]168@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:33.3394 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]74@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:36.1692 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]168@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:39.2524 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]62@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:42.4245 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]64@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:45.3637 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]64@atlasmail.com | support@homesnap.com | 2023-12-28 00:38:48.5101 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]62@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:30.5428 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]26@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:33.6369 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]37@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:36.5905 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]86@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:39.6162 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]62@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:41.8041 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]20@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:44.6638 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]74@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:47.5248 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]92@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:50.4679 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]55@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:52.7364 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]77@atlasmail.com | support@homesnap.com | 2023-12-28 00:39:59.7787 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]77@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:02.9706 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]862@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:05.0034 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]92@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:06.0192 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]90@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:08.1133 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]20@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:08.9883 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]25@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:11.1929 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]92@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:11.9900 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]25@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:14.1655 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]74@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:15.1980 -05:00 | Data Subject Request - Redaction/nondisclosure Request |

| SenderAddress | ToRecipients | CreatedDate | MessageSubject |
|---|---|---|---|
| [REDACTED]862@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:17.6516 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]55@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:18.2767 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]862@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:20.3897 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]83@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:23.2792 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]64@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:26.3434 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]10@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:29.0783 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]75@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:32.1142 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]90@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:35.3814 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]74@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:37.4912 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]77@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:39.5250 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]26@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:42.5736 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]25@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:45.2011 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]34@atlasmail.com | support@homesnap.com | 2023-12-28 00:40:47.7485 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]984@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:33.4060 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]54@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:36.0951 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]54@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:39.1495 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]98@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:42.0471 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]29@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:45.4946 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]22@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:48.5420 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]98@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:51.1135 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]22@atlasmail.com | support@homesnap.com | 2023-12-28 00:41:59.1799 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]79@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:01.6659 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]29@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:02.0566 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]58@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:04.3780 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]29@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:04.6594 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]223@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:07.3328 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]26@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:07.3797 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]76@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:10.2094 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]96@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:10.3996 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]26@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:13.2752 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]9@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:13.2908 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]96@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:15.7369 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]223@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:16.3620 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]96@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:18.6437 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]76@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:19.5501 -05:00 | Data Subject Request - Redaction/nondisclosure Request |

| SenderAddress | ToRecipients | CreatedDate | MessageSubject |
|---|---|---|---|
| [REDACTED]26@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:21.4638 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]50@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:22.6671 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]9@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:24.8393 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]9@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:27.6847 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]76@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:30.8036 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]79@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:33.7729 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]50@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:36.7306 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]50@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:39.7624 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]50@atlasmail.com | support@homesnap.com | 2023-12-28 00:42:42.9901 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]76@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:34.0622 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| I[REDACTED]36@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:36.9790 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]36@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:40.0275 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]45@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:42.1080 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]554@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:45.0843 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]92@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:48.1630 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]70@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:54.2191 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]41@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:55.2530 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]70@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:57.3315 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]39@atlasmail.com | support@homesnap.com | 2023-12-28 00:43:58.2848 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]554@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:00.3800 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]92@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:01.3490 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]554@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:03.2924 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]24@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:04.4489 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]36@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:06.3818 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]70@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:07.4132 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]36@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:09.4448 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]168@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:10.4461 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]92@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:12.4847 -05:00 | Data Subject Request - Redaction/nondisclosure Request |
| [REDACTED]94@atlasmail.com | support@homesnap.com | 2023-12-28 00:44:13.6568 -05:00 | Data Subject Request - Redaction/nondisclosure Request |

## CERTIFICATE OF SERVICE

I, Angelo A. Stio III, hereby certify that on this 14th day of April 2025, the

Joint Brief for Appellants and Joint Appendix (one volume of which was filed

under seal) were filed electronically using the Court's CM/ECF system, and thus

will be served electronically on any and/all Filing User(s) involved in this case.  I

further certify that a copy of documents filed under seal were served upon all

counsel of record via electronic mail to the following addresses:

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merego
Pem Law LLP
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
rparikh@pennlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

Mark C. Mao
Samantha D. Parrish
Boies Schiller Flexner LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94014
mmao@bsfllp.com
sparrish@bsfllp.com

Adam R. Shaw
Boies Schiller Flexner LLP
30 S Pearl Street
Albany, NY 12207
ashaw@bsfllp.com

Eric M. Palmer
Boies Schiller Flexner LLP
401 E Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
 epalmer@bsfllp.com

John Yanchunis
Morgan and Morgan
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
jyanchunis@ForThePeople.com

Kashif T. Chand
Office of Attorney General of New Jersey
124 Halsey Street, 5th Floor
Newark, NJ 07102
kashif.chand@law.njoag.gov

Liza B. Fleming
Michael L. Zuckerman
Office of Attorney General of New Jersey
RJ Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
Liza.Fleming@njoag.gov
Michael.Zuckerman@njoag.gov

<div align="right">
<i>/s/ Angelo A. Stio III</i>
Angelo A. Stio III
</div>